In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-1707

JON GILES,

*Plaintiff-Appellant,*

*v.*

GABRIELLE TOBECK *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:15-cv-02068 — **Sara Darrow**, *Judge.*

ARGUED JUNE 6, 2018 — DECIDED JULY 10, 2018

Before WOOD, *Chief Judge*, and KANNE and SCUDDER,
*Circuit Judges*.

PER CURIAM. Jon Giles, an inmate at Jerome Combs Detention Center, was punched and bitten when he tried to protect his cellmate from a violent detainee's assault. Giles sued several correctional officers, asserting that they failed to protect him from the attack in violation of the Eighth Amendment. The district court entered summary judgment for the defendants. Because a reasonable jury would be required to find

from the undisputed evidence that the officers were not reckless, and that they responded reasonably both to the risk of an attack and the actual attack, we affirm the judgment.

As this is an appeal from the entry of summary judgment, we recount the facts in the light most favorable to Giles, the non-movant. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). Giles's attacker, Kendrick Moore, had a history of violent interactions with inmates and correctional staff at the Center. Although Moore at one point was housed in segregation in a maximum-security area, he had been placed on suicide watch shortly before the attack and moved to the first floor of a general-population section of the prison called "E-POD," where he could more easily be monitored. While in E-POD, Moore stayed alone in his cell and would be let out each day for only one hour, when no other detainees were to be released from their cells.

On October 8, 2014, this precautionary system failed. That day the morning-shift guards, according to their log entry, refused to let Moore out of his cell for his hour "due to tension and repeated problems" with one of the officers. A supervisor told the officers to let Moore out later that day, and at 2:30 p.m. they did so. During the 3:00 p.m. shift change, Moore remained out of his cell and was spotted by the incoming officers, Gabrielle Tobeck and Matthew Meehan, who counted him as present during their headcount. At roughly 3:15 p.m., Tobeck released the inmates on E-POD's top tier. Four minutes later she (and Meehan) noticed Moore saunter past her desk. She immediately ordered Moore, who had been hiding in the showers until then, to return to his cell and lock up. He responded "Okay Tobeck" and continued walking toward his cell, which was also in the direction of the staircase.

But seconds later he sprinted up the stairs to the second floor, where Giles shared a cell with Robert Scott. Moore begin pummeling Scott outside of their cell. Giles, fearing that Moore was about to throw his cellmate over the second-floor railing, tried to ward him off.

On seeing Moore bound up the stairs, Meehan ordered the other inmates in the dayroom to steer clear of the fight. Tobeck, in the meantime, radioed for back-up. Officer Nicholas Mayo responded first, and within a minute he and another officer were let into E-POD by Tobeck. The two officers and Meehan darted up the stairs and for twenty seconds shouted at the inmates: "Stop it. Lay down. Cuff up." Giles quickly acceded to being handcuffed by Mayo before Moore (who was resisting Meehan) lunged at the restrained Giles and began biting his arm. While Moore was attacking Giles, the fourth officer removed Scott from the fight and brought him downstairs in handcuffs. The officer returned to the second floor along with several other officers who had just entered E-POD. Among them was Corporal Alvon Brown, who subdued Moore with a Taser. Within six minutes of the outbreak, the officers had removed all three inmates from E-POD.

After the attack Giles was taken to a hospital, where the staff disinfected his arm, gave him an unspecified injection, and wrapped the arm in bandages. Giles has two permanent scars and asserts that he continues to feel pain and has suffered anxiety attacks since the fight.

Giles sued Tobeck, Meehan, and Mayo for recklessly failing to prevent Moore's attack and being deliberately indifferent to the attack once it broke out. The district court entered summary judgment for the defendants, concluding that they all had responded reasonably to the fight, and that Tobeck's

actions before the attack amounted, at most, to gross negligence.

To contest summary judgment, Giles was required to produce sufficient evidence for a rational jury to find that (1) Moore presented an objectively serious risk of harm, and (2) a defendant was deliberately indifferent to that risk, meaning that he or she subjectively knew about the risk, and did not take reasonable measures to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

We may accept that Moore presented a serious risk of harm and that Giles produced sufficient evidence that the defendants each knew of the risk. A prison official must respond reasonably to a known risk of harm, but negligence or even gross negligence is not enough to show a constitutional violation. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Instead the official's response must be so inadequate that it amounts to a reckless disregard for the risk, *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005), and "effectively condones the attack." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). That a response did not avert the risk does not mean it was unreasonable, and the standard is always "reasonableness in light of the surrounding circumstances." *Dale*, 548 F.3d at 569.

Giles first contends that Tobeck acted recklessly by allowing the top-tier inmates out of their cells without first accounting for Moore's whereabouts. But her opening the cell doors prematurely was at worst negligence, not recklessness. At the time Tobeck released the top-tier inmates, the risk of an attack was not as apparent as it would become later, when she ordered Moore to return to his cell. Though Tobeck admits seeing Moore in the dayroom at the 3:00 p.m. headcount, she had

no reason then to infer that he presented a substantial risk of harm to any other inmates. Moore was expected to be out of his cell; he was scheduled for dayroom time between 2:30 and 3:30 p.m. This contrasts with *Junior v. Anderson*, in which we reversed summary judgment in favor of a prison guard who knew that the attacker's cell had not locked properly—presenting a security risk—but let the victim out anyway. 724 F.3d 812, 813–14 (7th Cir. 2013). Tobeck should not have let out the second-floor inmates until after Moore returned to his cell at 3:30 p.m., but nothing in the record implies that her actions were deliberate, malicious, or reckless rather than mistaken.

Giles next contends that Tobeck, upon realizing her error in releasing the second-floor inmates in Moore's presence, failed to act reasonably to correct it. Though she ordered Moore to lock himself up, Giles argues that this response was insufficient and that the "only reasonable action" was for her to ensure that Moore was escorted back to his cell. Merely ordering Moore to lock up was reckless, he says, because it put his fate in Moore's hands. He compares his case to *Mayoral v. Sheahan*, in which we reversed summary judgment for an officer who had let drunken inmates out of their cells after a gang leader falsely promised to "control 'his guys,'" 245 F.3d 934, 936 (7th Cir. 2001). We recognized in that case that the officer, in relying on the gang leader's promise, had recklessly "put the fate of the inmates in the hands of another inmate." *Id.* at 940.

Though escorting Moore back to his cell may have been a better choice, Tobeck's actions did not cross the line from negligently enabling the attack to recklessly condoning it. Unlike the guard in *Mayoral*, Tobeck did not deliberately abdicate her

responsibility once she became aware of a violent inmate's presence. Instead, by ordering Moore to return to his cell, she exerted her authority as a correctional officer. Though she may have exercised too much restraint by stopping at only an order, her belief that an order would be sufficient was reasonable. Moore orally confirmed his compliance and appeared to be obeying the order until the moment he sprinted up the stairs. A jury could conclude that Tobeck showed poor judgment in accepting Moore's word that he would obey her command, but such a mistake would not be enough to show the reckless disregard necessary for an Eighth Amendment violation. *See O'Brien v. Ind. Dep't of Corr. ex rel. Turner*, 495 F.3d 505, 510 (7th Cir. 2007). Meehan, for his part, reasonably could have agreed with Tobeck that an order was sufficient to make Moore walk the short distance back to his cell, so he had no duty to do anything more to avert the risk of an attack after observing Tobeck's actions. *See Fisher*, 414 F.3d at 664.

Finally, once the attack began, the undisputed evidence shows that each of the defendants responded reasonably to protect Scott and Giles from Moore. Tobeck called for back-up and waited for it to arrive, rather than jump into the fray herself. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (officer acted reasonably by calling for back-up instead of ordering attacker to stop); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) (same). And once Mayo and the rest of the back-up arrived, they and Meehan acted swiftly to "restore order to a chaotic situation," *Fisher*, 414 F.3d at 664, and did so in just a few minutes. The officers plausibly could have removed Giles from the situation even faster and thereby reduced or prevented his injuries, but the "mere failure of the prison official to choose the best course of action does not amount to a con-

stitutional violation." *Guzman*, 495 F.3d at 857 (internal quotation marks omitted) (quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

Given the preceding analysis, summary judgment was properly entered in the defendants' favor. We therefore need not address the defendants' remaining arguments. The judgment of the district court is AFFIRMED.