NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 14, 2019[*]
Decided January 15, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-2647

| | |
|---|---|
| WALLACE ARNOLD, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 13 CV 00613 |
| VISIONTEK PRODUCTS, LLC, | |
| *Defendant-Appellee.* | Andrea R. Wood, |
| | *Judge.* |

## O R D E R

Wallace Arnold sued Visiontek Products, LLC, his former employer, asserting that he was subjected to a hostile work environment based on his race and that he was later terminated in retaliation for complaining of racial discrimination, all in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 to

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. CIV. P. 34(a)(2)(C).

2000e-3. The district court entered summary judgment in favor of Visiontek, and we affirm.

Many facts in this case are contested, but on appeal we recount the facts in the light most favorable to Arnold, the opponent of summary judgment. *See Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). Beginning in 2006, Arnold worked as a member of Visiontek's production team, which required him to pack and ship boxes of products from Visiontek's warehouse to customers. His immediate supervisor was Wendell Calip, Visiontek's Vice President of Operations.

In August 2010, Visiontek's President and Chief Operating Officer, Michael Innes, sent an email to many of Visiontek's employees, including Calip, directing warehouse employees to enter and leave through the building's rear door. Arnold, who does not have an email address, never received that email, and he asserts that he never was made aware of Innes's instructions. Arnold's coworkers, however, testified that they were told to use the rear door and that they used the rear door exclusively to enter and leave the warehouse until Arnold was fired. For his part, Arnold asserted that he was "singled out" as the only employee who was required to use the rear entrance.

Visiontek's first complaint with Arnold's performance is reflected in an email that Innes sent Calip in February 2011. In it, Innes describes an after-hours confrontation that broke out when Arnold tried to tell a temporary worker in the warehouse how to perform his job duties. Arnold maintains that he was simply alerting the worker to a safety concern, but the worker "snapped" and caused a scene. Innes also recounts a confrontation between Arnold and another coworker, Jeff Anderson, after Arnold propositioned a female employee of another company that shared warehouse space with Visiontek. According to Innes, Arnold left work angry and showed up late to work the next day. Arnold disputes this account, maintaining that the female worker gave him a ride to his bus stop one day and he tried to show his appreciation by bringing her breakfast and a flower. He denies confronting Anderson, though he admits being late for work the next day.

Arnold received two disciplinary notices from Visiontek. The first was in response to his confrontation with Anderson: The notice states that Arnold made "negative verbal comments toward another employee" and warns Arnold that he could be subject to dismissal if his behavior did not improve. The second addressed his tardiness: The notice instructs him to call his supervisor if he was going to arrive late. Even though both notices bear Arnold's signature, he swore in an affidavit opposing Visiontek's motion for summary judgment that he was "never presented with the

notice[s], never given the opportunity to review, understand or acknowledge the notice[s], and was not aware [they were] placed in my personnel file."

In early 2012, Arnold became involved with the Occupy Wall Street movement and protesting the death of Trayvon Martin. In support of those movements, Arnold brought protest signs—seen by his coworkers and Innes—to work, including signs that Arnold admits included vulgar and inappropriate language. Arnold's coworkers testified that he would make signs using Visontek materials when he was supposed to be working, and that his sign-making activity affected his productivity. Arnold's coworkers said they resented having to do more work to make up for his inefficiency, which caused "bottlenecks" on the production line. Arnold denies that he ever made signs when he was supposed to be working or that his productivity suffered.

After seeing one of Arnold's signs, Calip issued Arnold a third disciplinary notice in March 2012. In this notice, Calip asks Arnold to take down his signs because they were not appropriate in the workplace. Arnold responded by stating that Calip was "violating his civil rights." Calip then reiterated "that the workplace is not a place to display such signage." The notice then warns Arnold not to display his signs in the workplace or he could be fired. Arnold agrees that Calip spoke to him around this time about displaying signs in the workplace, but he asserts that he never received this disciplinary notice, which is unsigned.

After that incident, Arnold maintains, he stopped making protest signs at work and kept all his signs out of sight. Shortly thereafter, he says, he stopped bringing signs to work altogether. But Calip and Arnold's coworkers say that Arnold continued to bring signs to work, and Arnold himself testified in his deposition that he was still bringing signs to work in July 2012. It was at that point that Calip had another discussion with Arnold about the signs, and Arnold accused Calip during that conversation of violating his "constitutional and civil rights."

Visiontek fired Arnold in August 2012. The notice of separation states that Arnold failed to be a "team member," caused friction with his coworkers, and worked at a "slow pace when we were busy causing bottlenecks during peak shipping hours."

Arnold sued, alleging that Visiontek violated Title VII and 42 U.S.C. § 1981 by creating a hostile work environment and by retaliating against him for complaining about the discrimination. Specifically, he asserted that Calip created a hostile work environment by (1) forcing him alone to use the back door to the warehouse, (2) assigning him "impossible" tasks that his coworkers did not have to complete, and

(3) keeping a secret disciplinary file on him—a reference to the disciplinary notices that Arnold says he signed but never reviewed. He also asserted that his termination was retaliation for his complaints in March 2012 and July 2012 that Calip was violating his civil rights.

The district judge entered summary judgment for Visiontek. She reasoned that Arnold's Title VII claims failed because he had admitted that they were untimely. As for his § 1981 claims, Arnold could not show that he was treated differently because of his race, so he could not establish that his work environment was racially hostile. And Arnold lacked evidence that his complaints to Calip of discrimination were connected to his termination, she concluded, so he had not shown retaliation.

On appeal, Arnold generally contests the district court's entry of summary judgment against him. But the district court's analysis was correct. Arnold's Title VII claims were untimely because he admitted that he did not file suit within 90 days of receiving the EEOC's right to sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *Averhart v. Sheriff of Cook Cty.*, 752 F.3d 1104, 1106 (7th Cir. 2014). Arnold also has not shown he was subjected to a racially hostile work environment because he lacks evidence that Calip's allegedly discriminatory actions "had a racial character or purpose." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011); *see also Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896–97 (7th Cir. 2016). Arnold could not identify a single "impossible" task that Calip assigned to him, his coworkers testified that they, too, used the back door, and there is no evidence that the disciplinary action in this case was racially motivated.

Regarding his retaliation claim, the judge correctly explained that Arnold has not shown that Visiontek's desire to retaliate against him for his complaints was the but-for cause of his firing. *See Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). There is no direct evidence of retaliatory motive, and the only circumstantial evidence is that Visiontek fired Arnold about one month after Arnold told Calip he was violating his "constitutional and civil rights." That timing, alone, is not sufficiently suspicious to create an inference of retaliation. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011); *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (five weeks between protected activity and adverse action insufficient in § 1983 suit). Moreover, Visiontek presented legitimate, non-retaliatory reasons for Arnold's termination, and Arnold cannot show that those reasons were mere pretext. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). Arnold protests that we should consider his age and other "mitigating circumstances" in evaluating this claim. But that contention asserts

that Visiontek's decision to fire him was flawed, not that it was a pretext for a retaliatory motive. *See Liu v. Cook Cty.*, 817 F.3d 307, 316 (7th Cir. 2016).

We have considered Arnold's other contentions, but none merits discussion. The judgment of the district court is AFFIRMED.