NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2020[*]
Decided September 30, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*[**]

No. 19-2809

| | |
|---|---|
| MWENDA MURITHI, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:16-cv-00152-NJR-GCS |
| BRYAN GLECKLER, *et al.,* *Defendants-Appellees.* | Nancy J. Rosenstengel, *Chief Judge.* |

**O R D E R**

Mwenda Murithi, an Illinois prisoner, requested placement in protective custody after receiving threats from a prison gang. When the gang made good on its threats and

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

[**] Circuit Judge Barrett was a member of the panel when this case was submitted but did not participate in the decision and judgment. The appeal is resolved by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

attacked Murithi some months later, he sued various prison officials for failing to protect him, in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. The district court entered summary judgment for defendants, concluding that Murithi could not show that defendants were deliberately indifferent to his reports of possible danger. We agree and affirm.

Shortly after his transfer to Menard Correctional Center, two inmates warned Murithi to enter protective custody to avoid attack. Murithi understood them to be relaying threats from the "Latin Folks," a prison gang that believed he had cooperated with law enforcement during his criminal case. He submitted a vague written request for placement in protective custody: "Due to the facts surrounding my case, in particular the claim that I informed to the police, I was ordered to check into protective custody or face dire consequences in the form of bodily harm." Upon receipt of his request, prison officials placed him in protective custody while they investigated the alleged threat. A counselor recommended denying Murithi's request to stay in protective custody because of his lack of details about the source of the threat. The prison, however, allowed him to remain in protective custody while he appealed the denial. Murithi stayed there for six months, until an administrative review board ultimately denied his appeal.

A few days after his return to general population, Murithi made a second request for protective custody. The events surrounding this request are disputed. Murithi testified that he was approached by Jeanette Cowan, a defendant correctional casework supervisor, and a non-defendant officer from the prison's "internal affairs" unit. Both told him that they had learned of, and foiled, a Latin Folks' attack against him. The officer advised Murithi to return to protective custody; Cowan offered to move him to a different cellhouse. Murithi declined her offer because of the prevalence of the gang throughout the prison, and he renewed his request for protective custody. For their part, defendants acknowledge Murithi's renewed request for protection and Cowan's offer to move him, but they deny that either she or the internal-affairs officer was aware of any gang plot.

As with Murithi's previous request, prison officials kept him in protective custody while Cowan investigated the threat. Murithi was again unable to specify the threats he faced, and Cowan recommended returning him to general population. She noted that she could not substantiate the threats and that she suspected Murithi might be seeking protective custody to get near an inmate whom he previously assaulted. Murithi then filed a grievance against her and stayed in protective custody for three

months while his grievance and appeal of her decision were pending. After the grievance was denied, the warden and assistant warden agreed with Cowan's recommendation to return him to general population.

When Murithi left protective custody, the prison was on lockdown. The day the lockdown was lifted, however, he was ambushed during lunch by a group of inmates. Murithi then made a third request for protective custody, which prison officials approved.

Murithi filed this Eighth Amendment suit against Cowan, the grievance examiner who denied his grievance against Cowan, the officials who approved Cowan's recommendations to return him to general population, and the acting director of the Illinois Department of Corrections. He contended that each defendant was deliberately indifferent to the risk that the Latin Folks would harm him.

The district court granted summary judgment for defendants. No evidence, the court began, showed that the director was personally involved in the case. Further, the other defendants who approved Cowan's recommendation reasonably relied on her investigation of the threats. As for Cowan, the court noted the dispute over her knowledge of the Latin Folks' threats but concluded that deliberate indifference could not be inferred from her response to those threats. As the court explained, the record reflected that she and other officials took reasonable measures to ensure his safety during her investigation. Though releasing Murithi from protective custody may have been negligent, no evidence suggested that the defendants acted recklessly or intentionally.

Murithi then moved for postjudgment relief, arguing that Cowan's speculation that he wanted to be near another inmate in protective custody was inaccurate and that defendants failed to thoroughly investigate his second request. He later supplemented the motion with affidavits from prisoners who said that Murithi was on the Latin Folks' "hit list." Because Murithi had moved for reconsideration within 28 days of judgment, the court construed his motion as one for relief under Federal Rule of Civil Procedure 59. The court denied his request, explaining that Murithi was merely rehashing his previous arguments and that his new affidavits did not support his claims.

On appeal, Murithi first challenges the entry of summary judgment for Cowan, arguing only that the district court improperly discredited his testimony in concluding that she was unaware of the Latin Folks' threats. This argument, however, misreads the court's rationale. The court acknowledged that Murithi's testimony created a genuine

dispute over Cowan's knowledge of the gang threats. Nonetheless, to sustain a deliberate-indifference claim, Murithi needed evidence that Cowan both knew about the threat *and* that her response was "so inadequate that it amounted to reckless disregard for the risk." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018); *see LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). Yet Murithi points to no evidence suggesting that defendants acted recklessly. To the contrary, Cowan offered to transfer him to a different cellhouse, and defendants removed him from general population both times he asked for protection. Further, nothing suggests that defendants released Murithi out of protective custody without first considering whether his risk of harm was serious; they held him there for more than eight months while investigating the merits of his requests. True, they ultimately failed to protect him from the gang, but no evidence suggests that their failure was "deliberate, malicious, or reckless rather than mistaken." *Giles*, 895 F.3d at 513.

Murithi also argues, for the first time, that the Illinois Department of Corrections had a policy to deny protection for suspected gang members like him, unless they had previously informed on their gang or been attacked. But Murithi forfeited this argument by failing to raise it in the district court. *See Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020). In any event, the record lack evidence of such a policy, and Murithi's mere speculation about its existence is insufficient to defeat summary judgment. S*ee Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Finally, Murithi asserts that the district court should have granted postjudgment relief after he submitted newly discovered evidence showing that he was on a Latin Folks "hit list." We are not persuaded that this evidence warranted disturbing the judgment. A district court may amend a judgment under Rule 59(e) only if the movant clearly establishes either (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). As the court correctly concluded, the new affidavits neither reflected that defendants were aware of the list nor showed that the court made a manifest error of law or fact.

AFFIRMED