EASTERBROOK, Circuit Judge.
While confined at the federal prison in Terre Haute, Indiana, William Miller fell out of an upper bunk and broke his back. Contending that he should have been in a lower bunk, Miller seeks compensation in this Bivens action. Miller died in June 2016; the record does not show why. His estate has been substituted as the plaintiff, but we use his name to make the exposition easier to follow.
Miller’s principal problem is the identity of the two defendants: Gary Rogers, a guard, and Helen Marberry, then the Warden of Terre Haute. Miller does not seek relief from any physician or nurse, even though the prison’s medical department is responsible for deciding who has a medical need for a lower bunk. (His complaint named nurse Trisha Haddix, but he has abandoned that claim.) Nor did Miller sue the guard responsible for making bunk assignments. That guard sits in a pod containing a computer with access to the prison’s SENTRY database that identifies medical restrictions. Rogers, by contrast, roamed the cells on foot.
The events underlying this suit began on January 6, 2009, when Miller was moved from the prison’s general population to the more restrictive “special housing unit” and assigned to an upper bunk. Miller contends, and we assume, that when Rogers made his rounds later that day Miller told Rogers that he had a brain tumor and was entitled to a lower bunk. Rogers replied that Miller must follow his assignment or be put on report for disobedience.
Five days later Miller fell from the ladder between the upper bunk and the floor. He hit his head and lost consciousness. Miller does not contend that Rogers (who apparently was not working that shift) or anyone else responded inadequately. Miller was carried on a backboard with a cervical collar to an examination room, where a nurse noted that he reported pain in his neck, back, and left foot. He was transported by ambulance to a hospital’s emergency room. The hospital conducted a CT scan that did not detect any fall-related problems. Miller returned to the prison within a few hours and was again assigned to an upper bunk. He does not contend that either Rogers or Marberry played a role in that assignment. Nor does he contend that any of the many medical personnel he saw that day issued, or should have issued, a lower-bunk-only directive. He does not contend that he then (or ever) went to the guard responsible for bunk assignments and either asked for a lower bunk or told that guard that he had a medical pass for one. He does say, however, that once he had returned to the special housing unit he told Rogers that he had fallen and repeatedly asked him for a lower bunk, and that Rogers did not respond.
On February 14, 2009, Miller rolled over while asleep in the upper bunk and fell *427 approximately six feet to the cement floor. This time he broke his back and suffered other serious injuries. Once again Miller does not contend that the care he received was substandard. He was carried on a backboard, with a cervical collar, to a hospital for a CT scan, which revealed injuries that led to surgery. When he returned to the prison he was again placed in an upper bunk, where he remained until December 1, 2009, when the medical staff directed that he be assigned to a lower bunk. Miller does not contend that Rogers played any role in his assignment to an upper bunk between his return from the hospital and December 1 — nor does he contend that any of the prison’s medical staff is liable for failing to ensure that he had a lower bunk then, or earlier. Finally, Miller does not contend that either Rogers or Marber-ry is liable for failing to ensure that upper bunks have railings, nets, or other devices ■to prevent inmates from falling out while asleep.
The district court granted summary judgment to Rogers and Marberry, giving two principal reasons. The first, to which we have alluded, is that neither Rogers nor Marberry was responsible for bunk assignments. The second is that if Rogers had consulted the SENTRY database he would not have discovered a lower-bunk directive. The district judge found it uncontested that an earlier pass had expired and that a new one was not issued until December 1, 2009. The judge stated that guards and wardens are entitled to rely on the medical staff to make medical decisions about medical problems.
Miller sees this séeond reason as his opening. He contends that there is a material dispute about what Rogers would have found had he consulted the SENTRY database. When denying a post-fall grievance about his bunk assignment, Warden Mar-berry wrote that Miller had had authorization for a lower bunk since early 2008 and should have brought this to the attention of the guard responsible for placement decisions (that is, the guard in the pod). Miller observes that this contradicts affidavits filed by Rogers and others relating that in January and February 2009 the SENTRY database did not contain a lower-bunk notation. Both statements could be correct; a lower-bunk assignment may have been issued but not added to the database. But there is still an apparent inconsistency, and Miller maintains that this requires a trial.
Yet the first problem remains— Miller has not sued the people responsible for bunk assignments. Miller supposes that it is enough to tell someone about a problem; anyone told must fix the problem, he insists. He told Rogers that he had a brain tumor and a lower-bunk assignment, and Rogers did nothing. He maintains that, while Marberry was walking through the special housing unit, he tried to tell her too, though she turned her back and left before he was finished. That makes her as much responsible as Rogers, Miller believes.
That line of argument is deficient on multiple levels. One is that it supposes that every federal employee is responsible, on pain of damages, for not implementing the decision of any other federal employee, so that all Miller need show is the existence of a lower-bunk order. Yet the Supreme Court has never held that Bivens actions can be used to enforce administrative orders. Nor has the Court held that every public official has a duty to carry out every other public official’s decisions. To the contrary, Castle Rock v. Gonzales, 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), holds that police and prosecutors are not hable for their failure to enforce a judicial no-contact order. Why would a lower-bunk permit receive greater status? *428 To get anywhere, Miller needed to establish that Rogers and Marberry violated his constitutional rights — -which for a medical claim under the Eighth Amendment means knowing of (or being deliberately indifferent to) a serious medical condition, then not taking minimally competent steps to deal with that condition. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Petties v. Carter, 836 F.3d 722 (7th Cir. 2016) (en banc).
A lower-bunk permit does not supplant that framework for Eighth Amendment claims. Miller does not contend that the very existence of a lower-bunk assignment would convey to any conscientious prison employee the existence of a serious medical condition, something that is a sine qua non of an Eighth Amendment medical-care claim. For all this record shows, medical personnel issue lower-bunk directives for reasons that do not imply the existence of a “serious” health problem; Miller did not ask in discovery for the criteria that the prison uses to issue lower-bunk directives.
His statement to Rogers that he had a brain tumor likewise falls short of demonstrating a serious medical condition. Brain tumors come in many sizes and locations; they have a range of effects, including none; benign tumors can last decades without causing adverse consequences. So to say “I have a brain tumor” would not necessarily imply to every guard or warden the need for medical care, let alone the particular accommodation (a lower bunk) that Miller demanded. What’s more, Rogers was not obliged to believe Miller’s assertion that he had a brain tumor and a lower-bunk pass. Prisoners can be manipulative, using deceit to obtain advantages; guards are accordingly entitled to be skeptical. Riccardo v. Rausch, 375 F.3d 521, 525 (7th Cir. 2004).
Prisons respond to the risk of manipulative conduct by exploiting the division of labor — for example, by allocating bunk-assignment duties to guards who have computer terminals that enable them to check prisoners’ assertions. Miller made his assertions about a brain tumor and a lower-bunk pass to Rogers, who could not verify them, while never complaining to the guard with bunk-assigning duties and access to the SENTRY database. This record shows that Miller .did have a thalamic brain tumor, diagnosed before he entered prison, that reduced sensation on the left side of his body. A lower-bunk assignment may have been well justified, but neither Rogers nor Marberry knew the details, consequences, and appropriate accommodations of Miller’s medical condition.
Liability under Bivens is personal rather than vicarious. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Vance v. Rumsfeld, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). One consequence of this rule was spelled out in Burks v. Raemisch, 555 F.3d 592 (7th Cir. 2009), which holds that prison officials who reject prisoners’ grievances do not become liable just because they fail to ensure adequate remedies. That’s a fair description of Rogers’s and Marberry’s situations. Indeed, Rogers did not have any grievance-adjustment responsibilities, and Marberry, who was the ultimate grievance adjuster, did not receive a formal grievance, from Miller until 18 months after his second fall. Defendants’ brief in this court relies on Burks and two similar decisions, Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011), and King v. Kramer, 680 F.3d 1013, 1018. (7th Cir. 2012), but Miller’s briefs do not discuss any of the three.
Although Iqbal, Vance, and Burks all hold that inaction following receipt of a complaint about someone else’s conduct is *429 not a source of liability, Miller seeks support from Haywood v. Hathaway, 842 F.3d 1026 (7th Cir. 2016), in which the majority of a divided panel thought that allegations against a state prison’s warden created a triable Eighth Amendment issue. Haywood contended that he had been held for 60 days in freezing conditions. The panel’s majority stressed that the warden had given instructions to the prison’s engineering staff, received a report, visited the scene, and declared that all was well. That personal involvement permitted an inference that the warden’s own conduct was unconstitutional. Miller’s allegation, by contrast, is that Rogers and Marberry brushed off his complaints, leaving them to be handled through the chain of command. That brings Miller’s claim within the scope of Iqbal, Vance, and Burks rather than Haywood.
AFFIRMED