In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-1668

LUCINDA LOVETT and MICHAEL LOVETT,
Co-Personal Representatives of
the Estate of Daniel J. Martin,

*Plaintiffs-Appellees*,

*v.*

LANDON HERBERT and
ZACHARY OVERTON,

*Defendants-Appellants*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 15 C 63 — **William T. Lawrence**, *District Judge*.

_____

ARGUED APRIL 20, 2018 — DECIDED OCTOBER 29, 2018

_____

Before SYKES, and BARRETT, *Circuit Judges*, and DURKIN, *District Judge*.*

DURKIN, *District Judge*. On December 13, 2013, Daniel Martin

_____

 * The Honorable Thomas M. Durkin, Northern District of Illinois, sitting by designation.

was arrested for drunk driving and taken to the jail in Clay County, Indiana. While there, Martin fell out of an upper bunk bed, suffering injuries that eventually led to his death several months later. Martin's estate sued Clay County correctional officers Landon Herbert and Zachary Overton who were on duty at the jail that night. The district court denied the Officers' motion for summary judgment on qualified immunity. The Officers appeal that order.

## I. Background

When he arrived at the jail, Martin was booked by Officers Herbert and Overton. Officer Herbert was familiar with Martin from previous alcohol-related arrests. Martin's booking paperwork noted that he had a blood-alcohol content of 0.16%. (When he was subsequently taken to the hospital, his blood-alcohol content was measured at 0.22%.) The district court found that Officer Herbert "smelled alcohol on Martin, but neither [Officer] Herbert nor [Officer] Overton observed any slurred speech or stumbling on Martin's part." In statements made to a detective investigating the incident, Officer Herbert said he could tell Martin was intoxicated "because he seemed slow," whereas Officer Overton said that if he had not smelled alcohol then he would not have known that Martin was intoxicated. The district court also noted that "[a]fter Martin was booked in and fingerprinted, he asked to retrieve a phone number from his cell phone so that he could arrange for his dog to be fed."

The receiving area of the jail, where new arrestees are temporarily detained, has six two-person holding cells (cells 1-6), one padded cell, one single-person medical isolation cell, and

a "drunk tank" with a capacity for 14 people.[1] The two-person cells each contain a bunk bed. On the night in question, cell 1 was occupied by a male inmate from another county who was a safety concern; cell 2 was occupied by two male inmates; cell 3 held one female county inmate; cell 4 held one male inmate; cell 5 held one female federal inmate; and cell 6 held one male county inmate who was a safety concern.[2] The drunk tank was occupied by six or nine federal immigration detainees,[3] and did not contain bunk beds. The medical cell was occupied, but the padded cell was not.

Officer Overton decided to place Martin in cell 4, which was occupied by one male inmate. The other inmate in cell 4 had recently had surgery and required the bottom bunk. Martin told Officer Herbert that he was too drunk to get up to the upper bunk.[4] Officer Herbert disputes that Martin cited his intoxication as the reason for this inability. Officer Herbert says he told Martin to take the mattress off the upper bunk

---

[1] "Drunk tank" is a slang expression for a jail cell or separate holding facility dedicated to accommodating detainees who are intoxicated, where they are held until sober.

[2] The district court did not state whether the inmates in cells 2 and 4 were there for county or federal, charges or crimes.

[3] The district court's opinion stated there were six immigration detainees in the drunk tank, but the parties agree the evidence shows there were nine.

[4] The evidence of some of Martin's statements underlying the parties' factual disputes are interrogatory answers based on statements Martin made to his wife before he passed away. Since we find that the Officers are entitled to qualified immunity even resolving all factual disputes in favor of the Estate, it is unnecessary to address any hearsay issues with regard to these statements.

and put it on the floor. The Estate disputes this. Martin's cell-mate testified he heard Officer Herbert tell Martin he could sleep on the floor. The mattresses are thin and not heavy, and are easily moved by one person. However, it was against the jail's policy to place mattresses on the floor.

Officer Overton decided to place Martin in cell 4 rather than the drunk tank because the immigration detainees were about to be transferred. The Officers intended to move Martin to the drunk tank after the immigration detainees were removed.

Martin was not placed in the padded cell because the Officers had reason to anticipate that a particular inmate in the long-term holding section of the jail would need to be separated that night. It is not clear why the two female detainees being held in separate cells were not placed in the same cell so Martin could have access to a bottom bunk in one of their vacated cells.

As shown on the surveillance video, shortly after being placed in cell 4, Martin climbed onto the upper bunk. About 30 minutes after being placed in the cell, Martin fell while attempting to climb down. He hit his head on a table on the opposite wall, damaging his spinal cord and paralyzing him permanently. He died five months later.

Martin's Estate sued Officers Herbert and Overton for failing to provide adequate medical care in violation of the Fourth Amendment. The Estate argued that a person with Martin's level of intoxication should not have been assigned to a cell where the only open bunk was an upper bunk.

The Officers moved for summary judgment and sought qualified immunity for their conduct. The district court denied the motion on the merits, explaining that because:

> there are competing versions of what occurred and whether [Officers] Overton and/or Herbert knew or should have ascertained Martin's level of intoxication before assigning him to a cell, and the Court must view the facts in the light most favorable to the Plaintiffs, the Court finds that there are questions of fact regarding whether Defendants Herbert's and Overton's actions were objectively unreasonable that preclude summary judgment on the Plaintiffs' Fourth Amendment claims.

The district court also denied Officers Herbert and Overton qualified immunity because:

> the factual disputes identified above regarding the officers' knowledge bear directly upon whether it was objectively reasonable for the individual Defendants to believe they acted in compliance with clearly established law. Therefore, the Court cannot decide at this stage of the proceedings whether their action clearly violated established law. Summary judgment is not available where factual disputes infuse issues on which entitlement to immunity turns.

Officers Herbert and Overton filed this interlocutory appeal on the qualified immunity issue.

## II.  Standard of Review

A district court's denial of qualified immunity is reviewed de novo. *See Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018). We "draw all factual inferences in favor of Plaintiffs." *Orlowski v. Milwaukee County*, 872 F.3d 417, 421 (7th Cir. 2017).

## III.  Analysis

### A.  *Jurisdiction*

Ordinarily, interlocutory decisions such as the denial of summary judgment are not subject to appellate review. *See Hurt*, 880 F.3d at 839 (citing 28 U.S.C. § 1291). However, "there is a limited exception for defendants who were denied qualified immunity on summary judgment." *Hurt*, 880 F.3d at 839 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "We may consider such appeals to the extent that the defendant public official presents an 'abstract issue of law.'" *Green v. Newport*, 868 F.3d 629, 632 (7th Cir. 2017) (quoting *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014)). In order to present such an issue for appeal, the "defendant may accept, for purposes of the qualified immunity inquiry, the facts and reasonable inferences favorable to the opponent of immunity, and argue that those facts fail to show a violation of clearly established law." *Hurt*, 880 F.3d at 839 (citing *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013)).

The Estate argues that appellate jurisdiction is lacking because the district court found material factual disputes. The parties dispute Martin's level of intoxication and the Officers' knowledge of it. They also dispute the availability of other cells, and the level of risk an upper bunk created. The district court held that these disputes precluded summary judgment on both the question of whether the Officers' conduct violated

the Fourth Amendment and the question of whether they are entitled to qualified immunity.

This holding does not deprive us of jurisdiction, however, because the district court erroneously conflated two distinct inquiries regarding reasonableness. The Supreme Court has explained that "it does not suffice for a court simply to state that an officer may not [act] unreasonabl[y] … , deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Although questions of (1) Fourth Amendment liability and (2) qualified immunity both involve an analysis of the "reasonableness" of a defendant's conduct, the objects of those analyses are different. As we have explained in prior cases, "'the substantive constitutional standard protects [a defendant officer's] reasonable factual mistakes [whereas] qualified immunity protects [the officer] from liability where [he] reasonably misjudge[d] the legal standard.'" *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quoting *Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009)); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed …. [By contrast,] [t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.").

This distinction allows us to work around the factual disputes identified by the district court by assuming that the Officers knew Martin was severely intoxicated and that cells without upper bunks were available. Making these assumptions, we can properly exercise jurisdiction to determine

whether providing a severely intoxicated person access to an upper bunk, in a cell where the lower bunk was occupied, violates clearly established law for qualified immunity purposes.

### B. Qualified Immunity

"Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). In practice, this means that "[a] state official is protected by qualified immunity unless the plaintiff shows: '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2017)). "We have discretion to choose which prong to address first, and since the second prong is dispositive here, we address only whether the right at issue was clearly established." *Mason-Funk v. City of Neenah*, 895 F.3d 504, 507-08 (7th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A right is "clearly established" when it is "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Such knowledge can be imputed to a defendant officer in two scenarios. *See Reed v. Palmer*, --- F.3d ---, 2018 WL 4870351, at *3-4 (7th Cir. Oct. 9, 2018). First, if we or the Supreme Court have previously held that conduct analogous to the defendant officer's actions constitutes a violation of the right at issue, the officer will not be entitled to qualified immunity. *See Mason-Funk*, 895 F.3d at 508 (we ask whether "'existing precedent

[has] placed the statutory or constitutional question beyond debate.'" (quoting *Kisela*, 138 S. Ct. at 1152)); *Kemp*, 877 F.3d at 351 ("'[W]e look first to controlling Supreme Court precedent and our own circuit decisions on the issue.'" (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000))). Second, in the "rare" case when the defendant officer's conduct is so "egregious" that it can be said to "obviously" violate the right at issue, "the plaintiffs may not be required to present the court with any analogous cases." *Jacobs*, 215 F.3d at 767; *see also Abbott v. Sangamon County*, 705 F.3d 706, 723-24 (7th Cir. 2013) ("a closely analogous case" is not required to demonstrate violation of clearly established law when "the conduct is so egregious and unreasonable that … no reasonable [official] could have thought he was acting lawfully"). In such cases, the general statement of the right at issue can provide the defendant officer sufficient notice that his actions were illegal. *See Kisela*, 138 S. Ct. at 1153 ("'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' [They can] create clearly established law [in] an 'obvious case.'" (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

Both methods of inquiry into whether a right is "clearly established … 'must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742) (emphasis in *Mullenix*). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how

the relevant legal doctrine … will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Saucier*, 533 U.S. at 205)).

Here, the right at issue is a pre-arraignment detainee's Fourth Amendment right to "objectively reasonable" treatment. We have explained that this right is assessed with reference to the defendant officer's notice of the detainee's medical need, the seriousness of the medical need, the scope of the alleged required treatment, and police interests. *See Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *see also Otis v. Demarasse*, 886 F.3d 639, 645 (7th Cir. 2018). The Estate argues that the Officers obviously violated this right by giving a severely intoxicated person access to an upper bunk. The Officers argue that only analogous precedent could have put them on notice that their conduct was unreasonable, but that no such precedent exists.

Examination of the specific context of the Officers' conduct in this case shows that it was not "egregiously" or "obviously" unreasonable. Martin's severe intoxication did not necessarily indicate imminent or ongoing danger, such that giving access to an upper bunk was patently unreasonable. Although severe intoxication impairs a person's physical and mental abilities, the level of impairment varies by individual, and it is undisputed that Martin was communicating with the Officers and moving around under his own capacity prior to being left in the cell. Further, impairment from intoxication eventually decreases with time. We and the Supreme Court have required a much higher level of obvious risk to deny qualified immunity based on the Fourth Amendment's general requirement of reasonable conduct with respect to detainees. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (denying

qualified immunity because handcuffing prisoner to hitching post for hours in summer sun violated clearly established law); *Estate of Perry v. Wenzel*, 872 F.3d 439, 460 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1440 (Apr. 2, 2018) (an officer who "fail[ed] to take *any* action in light of a [detainee's] serious medical need" obviously violated the Fourth Amendment and was not entitled to qualified immunity) (emphasis in original).

Additionally, the facts of this case in particular show that there were a number of intervening events between the Officers' decision to place Martin in a cell with an upper bunk and Martin's injury: Martin decided to climb into the upper bunk rather than taking the mattress off the upper bunk and sitting or sleeping on the floor; Martin attempted to climb down from the upper bunk before he was sufficiently sober; Martin happened to fall; Martin happened to hit his head and seriously injure himself when he fell. None of these events is so obviously foreseeable that the Fourth Amendment's requirement of reasonable conduct would have given the Officers' notice that their actions violated that standard.

The Estate also identifies several cases concerning treatment of people in jail in an attempt to establish that the Officers conduct fell outside the bounds of what courts have determined to be reasonable conduct.[5] In *Estate of Miller v. Marberry*, we affirmed summary judgment for a prison warden

---

[5] A number of these cases concern convicted inmates (rather than pre-trial detainees like Martin) protected by the Eighth Amendment's deliberate indifference standard, which imposes a higher burden of proof on plaintiffs than the Fourth Amendment reasonableness standard at issue here. *See Williams*, 509 F.3d at 403. Of course, conduct that is deliberately

and a guard when an inmate with a brain tumor fell out of a upper bunk. 847 F.3d 425 (7th Cir. 2017). As an initial matter, this case cannot have served to clearly establish Martin's Fourth Amendment right because it concerned Eighth Amendment rights and was decided after the events in this case. In *Marberry*, we held that the inmate's lower-bunk permit and the defendants' knowledge that he had a brain tumor did not constitute knowledge of a serious medical condition requiring a lower bunk. *Id.* at 428-29. The Estate argues the case can be parsed to show that when an inmate has a more obvious medical condition like Martin's, the Officers should know that they should not assign that inmate an upper bunk. But this is too fine an analysis on which to base a finding of clearly established law, and we are skeptical that a decision on the merits (not addressing qualified immunity), finding that defendant officials did *not* violate an inmate's rights, can clearly establish when a right *is* violated.

The same can be said for *Estate of Simpson v. Gorbett* in which we affirmed a grant of summary judgment to jail guards who assigned a narrow (2.5 foot wide) upper bunk to an obese inmate. 863 F.3d 740 (7th Cir. 2017). The Estate argues that this case clearly established Martin's rights in this case because the jail guards in *Gorbett* assigned the inmate to the drunk tank for 13 hours before assigning him to a cell. After 13 hours, the inmate no longer appeared drunk, but he suffered a withdrawal seizure and fell out of the bunk. But like *Marberry*, this case is too recent to have informed the Officers here. And even if the case was timely, it does not establish that

---

indifferent is also unreasonable, but conduct that is not deliberately indifferent may still be unreasonable. We consider the relevance of these cases with that principle in mind.

the Officers were unreasonable in not assigning Martin to the drunk tank, as the inmate's physical characteristics and the circumstances of the cell here are entirely different.

In *Estate of Clark v. Walker*, we affirmed a denial of qualified immunity where the defendant officer "chose to do nothing" despite his knowledge that the inmate was a suicide risk. 865 F.3d 544 (7th Cir. 2017); *see also Hall v. Ryan*, 957 F.2d 402 (7th Cir. 1992) (affirming denial of summary judgment to defendants on claim of failure to take action regarding suicide risk). A suicide risk is simply not analogous to permitting an intoxicated person access to an upper bunk, and there is no suggestion that Martin was a suicide risk. We cannot expect officers considering how to treat an intoxicated person to extrapolate the reasonableness of their actions from a court decision about treatment of a person who is a suicide risk. That would require the officers to measure the extent of the risk for a suicidal person against the risk associated with an intoxicated person. Such an abstract analysis goes beyond the consideration of particular facts required by the Supreme Court and cannot serve to clearly establish the law. The same analysis applies to the Estate's citation of an Eighth Circuit case addressing an inmate with a seizure condition. *See Phillips v. Jasper County Jail*, 437 F.3d 791 (8th Cir. 2006).

The rest of the cases the Estate cites are district court decisions that "'have no weight as precedents and therefore cannot clearly establish a constitutional right.'" *Mason-Funk*, 895 F.3d at 509 (quoting *Boyd v. Owen*, 481 F.3d 520 (7th Cir. 2007)). Contrary to the Estate's argument, the relevance of "trends" outside this circuit, *see Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017), is not an exception to the prohibition on the use of district court decisions.

Therefore, even drawing all factual inferences in its favor, the Estate has failed to show that the Officers' conduct violated clearly established law. For that reason, the Officers are entitled to qualified immunity.

## IV. Conclusion

The denial of the Officers' motion for summary judgment is REVERSED and REMANDED with instructions to the district court to enter judgment for the Officers on the Estate's Fourth Amendment claim.