**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 22, 2019[*]
Decided April 23, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-1765

| | |
|---|---|
| SWAYSEY RANKIN,<br>*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 16-CV-3138 |
| THOMAS BAKER, et al.,<br>*Defendants-Appellees.* | James E. Shadid,<br>*Judge.* |

## O R D E R

Swaysey Rankin, an Illinois inmate, has sued a doctor and warden for violating the Eighth Amendment by requiring that he use the prison's regular "sick call" system, rather than its hypertension clinic, to treat his scalp condition and knee pain. The district court entered summary judgment for the defendants. Because Rankin furnished no evidence to support a finding that either defendant was deliberately indifferent to his medical needs, we affirm.

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

We construe the facts in favor of the nonmoving party (Rankin), drawing all reasonable inferences in his favor. *See Arnett v. Webster*, 658 F.3d 742, 749 (7th Cir. 2011). In March 2015 Rankin went to the free clinic for chronic hypertension at Western Illinois Correctional Center. He saw Dr. Thomas Baker, then the prison's medical director. During his visit at the clinic, Rankin complained of "excruciating" knee pain and "unbearable" scalp pain from folliculitis (an inflammation of the hair follicles). Dr. Baker told Rankin that he treats only issues relating to high blood pressure at the hypertension clinic unless the patient presents an emergency, and none of Rankin's complaints qualified. Dr. Baker advised Rankin to sign up to see a nurse at a "sick call" to have his ailments addressed. To sign up for a sick call, an inmate asks a correctional officer to put his name on a list to see a nurse within 72 hours. Rankin told Dr. Baker about three times when he tried but was unable to sign up for a sick call. Twice he asked an officer in his unit to sign him up and once he put his request in the medication-refill box, but he did not get to see a nurse any of these three times.

The day after Dr. Baker advised Rankin to use the sick-call process, Rankin began filing grievances. He first complained that Dr. Baker should have treated his folliculitis and knee pain at the hypertension clinic and that he should not have to use the sick-call process because it requires a $5 copayment. Dr. Baker received and responded to this grievance. He reiterated the limited purpose of the hypertension clinic and noted that the copayment is required by state law. Rankin then filed more grievances, but nothing suggests that Dr. Baker saw these. In these grievances he repeated that Dr. Baker refused to treat his nonhypertensive conditions and that he "tried on numerous occasions to get put on [the] inmate sick call list all to no avail." When he did not receive a sick call, he assumed that the correctional officers whom he had approached had failed to put his name on the sick-call list. He also said that sometimes officers refused to put his name on the sick-call list because he did not show his identification card or wear his state-issued "blues."

Rankin also complained "several times" to Jeff Korte, the warden. Specifically, he stopped Korte in the hallway to show him blood and pus caused by his folliculitis. Korte told Rankin that he "would look into it," but Rankin did not get an immediate sick call. About six months after Rankin saw Dr. Baker, Rankin received additional care at the hypertension clinic. A nurse practitioner whom he saw in the clinic prescribed shampoo and ointment to treat his folliculitis. The next month, another doctor prescribed ibuprofen to help his knee and scalp pain.

Invoking 42 U.S.C. § 1983, Rankin sued Dr. Baker and Korte, accusing them of deliberate indifference to his folliculitis and knee pain, and to his difficulties with the prison's sick-call system. (Rankin also sued others, but he does not challenge judgment in their favor.) Rankin maintained that he submitted "dozens" of sick-call requests, but neither he, nor other inmates who also said that they made sick-call requests, received a sick-call visit. Prison officials replied that they have no records of his attempts to sign up for a sick call, but they have records of other inmates successfully using the system. The judge entered summary judgment for Dr. Baker and Korte. He concluded that a jury could not reasonably find that either was personally aware of a problem with the prison's sick-call system, and Dr. Baker's approach to addressing only blood-pressure issues at the hypertension clinic was reasonable.

On appeal Rankin first contends that the judge resolved disputed facts improperly by deciding that the sick-call process worked. But even if we assume that Rankin and other inmates did not always receive sick-call visits when they requested them, that assumption does not support a finding that Dr. Baker and Korte are liable. For Rankin to hold them liable for violating the Eighth Amendment, the record must contain evidence that they knew about and recklessly ignored a problem with the sign-up process for sick calls. *See Farmer v. Brennan*, 511 U.S. 825, 837, 839 (1994); *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc), *as amended* (Aug. 25, 2016). But the record contains no such evidence. Rather, Rankin told Dr. Baker only that on three occasions he did not receive a requested sick call and that he objected to the $5 copayment. And he submitted grievances that he could not get on the sick-call list. For two reasons, this is not sufficient to create liability. First, Rankin did not tell either Dr. Baker or Korte anything that might have allowed them to identify the source of his difficulties with the sick-call process, such as the officers who ignored his requests and when. Prison officials who do not address a problem not adequately raised with them do not reflect deliberate indifference because they need not take as true every complaint that an inmate asserts. *See Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004). Second, the only detail that Rankin supplied—he resented the $5 copayment—does not violate the Constitution because Rankin does not assert that this condition was unaffordable. *See Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012).

Rankin next maintains that Dr. Baker's refusal to treat his folliculitis and knee pain at the hypertension clinic reflects deliberate indifference. An official does not violate the Eighth Amendment unless the official recklessly disregards a serious risk of medical harm. *See Farmer*, 511 U.S. at 846. Dr. Baker's response was reasonable: he told Rankin that he treated only blood-pressure issues in the hypertension clinic unless the

inmate presented an emergency, which his follicle condition and knee pain were not. Rankin now argues on appeal that at the clinic he was limping and that pus and blood oozed from his scalp. But Rankin presented no evidence to the district court that Dr. Baker even saw these asserted conditions, let alone that they required immediate intervention. A reasonable jury, therefore, could not find that Dr. Baker's referral to the sick-call system was "blatantly inappropriate" and lacked professional judgment. *See Arnett*, 658 F.3d at 751; *see also Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Finally, Rankin argues that Korte deliberately disregarded his medical needs. But as warden Korte is liable only if the problems with Rankin's medical care occurred at Korte's direction or with his knowledge and consent to those problems. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only relevant evidence that Rankin presents about Korte is that he heard Rankin's medical complaints, saw some blood and pus on Rankin's pillow, and replied that he would look into the problem. As warden Korte may leave to others the responsibility of handling medical care and grievances. *See Estate of Miller v. Marberry*, 847 F.3d 425, 428–29 (7th Cir. 2017); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, Rankin fails to establish liability by asserting that Korte "brushed off his complaints, leaving them to be handled through the chain of command." *See Estate of Miller*, 847 F.3d at 429.

AFFIRMED