**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2019
Decided June 24, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3039

| | |
|---|---|
| SHONDRA ROYAL, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:17-cv-00247-PRC |
| CAMERON NORRIS, et al., *Defendants-Appellants.* | Paul R. Cherry, *Magistrate Judge.* |

**O R D E R**

Lance Royal ingested cocaine moments before his June 25 arrest and died hours later. His estate, represented by his widow Shondra Royal, sued the detectives involved in his detention—Cameron Norris, Kurt Franceus, Juan Gutierrez, Shane Heath, and Jon Bowers—alleging that they violated Royal's constitutional right to medical treatment by not sending him immediately to the hospital. The magistrate judge denied the officers' motion for summary judgment, concluding that they were not entitled to qualified immunity. We reverse because no clearly established law would have put the officers on notice that their conduct violated the Fourth Amendment.

### I.        Background

Lance Royal and a companion, Porshea Gentry, left Royal's Fort Wayne apartment and got into Royal's car; soon after, they were pulled over by Juan Gutierrez, a detective for the City of Fort Wayne, pursuant to an ongoing drug investigation. Moments later, several other officers —Detectives Norris, Franceus, Heath, and Bowers—arrived at the scene. Heath arrived in time to watch Gutierrez approach the passenger door and pull Gentry out of the car. Norris then forcibly removed Royal from the driver's side and put him on the ground.

The officers noticed that Royal was chewing something, and Norris told him to spit it out. Royal spat small pieces of crack cocaine onto the pavement. Norris asked how much he had eaten, but Royal responded that "it was just a pill." Bowers and Norris had Royal open his mouth and stick out his tongue, and they told Royal that it would not affect his criminal charges if he had swallowed anything. They continued to press Royal about the cocaine, explaining that they were worried about his health, that ingesting cocaine could cause a heart attack, and that he should tell them if he had swallowed any. Royal consistently denied swallowing cocaine.

The officers called paramedics to determine whether Gentry or Royal needed to be taken to the hospital. Once the paramedics arrived, Gutierrez and Bowers told them that Gentry was nauseated and that Royal had been chewing cocaine. The paramedics examined Royal, who assured them repeatedly that he was fine (he said he was "positive" that he was alright). The paramedics determined that Royal did not need medical attention.

Franceus transported Royal to the police station in his squad car. During transport, Franceus again asked Royal how he was feeling and whether he had eaten any cocaine. Royal said that he had not eaten any and that he had spit it all out. During the fifteen-minute drive, Royal and Franceus carried on a lengthy conversation.

Franceus placed Royal in an interview room. From another office, he activated the interview room's camera system so that he could keep an eye on Royal while he conducted other work. After noticing that Royal was standing up and leaning over the table, Franceus went to check on him and asked whether he was okay. Royal reported that he was fine. Franceus asked if he was sure, and Royal said that he was "positive." Royal asked for coffee, and Franceus brought him a bottle of water. Franceus returned to his office.

Soon after, while speaking on the phone with a federal probation officer about Royal, Franceus heard what he "believed to be a chair hitting a wall" in the interview room. He rushed to the viewing room area and saw Royal lying on the ground. He testified that he did not think that this was strange; he said that detainees often get tired or bored and try to sleep on the floor. Minutes later, he finished his call and returned to the interview room, where he saw Royal experiencing what looked like a seizure. He immediately called for an ambulance, rolled Royal over, and began performing first aid. Noting Royal's heavy breathing, Franceus called for additional officer support and checked on the status of the ambulance. Franceus moved Royal to the hallway and conducted chest compressions until he was relieved by the Fort Wayne Fire Department. Franceus rode in the back of the ambulance with Royal and the paramedics, and shortly after Royal arrived at the hospital, physicians declared him dead.

Royal's estate, represented by his wife Shondra, sued the City of Fort Wayne along with officers Norris, Franceus, Gutierrez, Heath, and Bowers, for violating Royal's Fourth Amendment right to adequate medical treatment—specifically, by failing to send him immediately to the hospital after his arrest. The officers moved for summary judgment, arguing that their conduct did not violate Royal's constitutional right to adequate medical care and that they were entitled to qualified immunity in any event. The estate responded that there remained a genuine dispute about whether the officers were on notice of Royal's serious medical need; in support, it pointed to Gentry's deposition testimony in which she insisted that she had told the officers that both she and Royal needed medical attention. The officers moved to strike that portion of Gentry's deposition, arguing that the uncontested video that captured her arrest disproved that she had said any such thing.

The magistrate judge denied the officers' motion to strike, explaining that the officers had failed to point to any specific part of the video that contradicted Gentry's deposition. And he agreed with the estate that there was a genuine dispute about whether the officers were on notice that Royal had ingested cocaine. Viewing this disputed question in the light most favorable to the estate, the magistrate judge concluded that a reasonable jury could decide that each officer violated Royal's Fourth Amendment right to adequate medical treatment by not sending him immediately to the hospital.

As for qualified immunity, the magistrate judge concluded that Royal's right to medical treatment was clearly established at the time of the arrest, so qualified immunity did not attach. He relied on *Estate of Perry v. Wenzel*, 872 F.3d 439, 460 (7th Cir. 2017), which explains that since 2010, the "failure to take *any* action in light of a [detainee's] serious medical need" precluded qualified immunity. Based on this precedent, the magistrate judge concluded that the officers' conduct violated Royal's clearly established Fourth Amendment right, and he denied their motion for summary judgment.

## II.    Discussion

We will put aside the question whether, given the video evidence, there is a genuine issue of material fact about whether the officers had notice of Royal's serious medical need. *Cf. Scott v. Harris*, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). We don't need to engage that issue, because even if the officers had notice, their conduct did not violate any clearly established law.

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (internal quotations omitted). It attaches unless the plaintiff shows (1) that the officer violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018); *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). We have the discretion to choose which prong to address first, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and because the second prong is dispositive here, we proceed directly to the inquiry whether the right at issue was clearly established. *Mason-Funk v. City of Neenah*, 895 F.3d 504, 507–08 (7th Cir. 2018).

For a right to be clearly established, the law must be so clear, its "contours" so "definite," that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). This knowledge can be imputed to a defendant "in two scenarios." *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018). First, a right is clearly established when this court or the Supreme Court has "held that conduct analogous to the defendant officer's actions constitutes a violation of the right at issue." *Id*. Second, a defendant violates clearly

established law when the constitutional violation is so egregious that it is "patently obvious." *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000)).

Both methods of evaluating whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S.Ct. at 308. The Supreme Court has repeatedly advised courts "not to define clearly established law at a high degree of generality." *Kisela*, 138 S.Ct. at 1152. And it has stressed the importance of specificity in the Fourth Amendment context in particular, where it is often difficult for an officer to determine how the relevant legal doctrine might apply to a unique factual situation. *Id.* at 1153; *Mullenix*, 136 S.Ct. at 308.

Here, the right at issue is an arrestee's Fourth Amendment right to medical care. To assess whether an officer has violated this right, the court asks whether the officer's conduct was objectively reasonable. The officers assert that neither the estate nor the magistrate judge pointed to any legal precedent holding that their specific conduct violated the Fourth Amendment, and that no such precedent exists. Without any such precedent, they argue, they could not have violated clearly established law and are therefore entitled to qualified immunity.

The officers are right: the magistrate judge did not identify any clearly established law that the officers violated. He cited one case—*Estate of Perry v. Wenzel*— for the general proposition that, since at least 2010, "failure to take *any* action in light of a [detainee's] serious medical need" precluded qualified immunity. 872 F.3d at 460 (emphasis original). But the officers' conduct in that case—failing to take any action whatsoever—is not analogous to the officers' conduct here. Immediately after being put on notice that Royal might have ingested cocaine, the officers repeatedly asked him whether he had swallowed any, asked how he felt, explained the danger of eating cocaine, and assured him that he would not face additional criminal penalties for telling them if he had. Even though Royal (at several stages) lucidly and unequivocally denied swallowing any cocaine, the officers, in an abundance of caution, asked paramedics to independently evaluate him. The paramedics examined him and determined that he did not need medical care.

Because the officers did not "fail to take any action," *Estate of Perry* would not have put them on notice that their response to Royal was clearly unconstitutional. In holding otherwise, the magistrate judge defined the clearly established law at a high

level of generality instead of with the specificity that "is a necessary part" of the qualified-immunity standard. *Kisela*, 138 S. Ct. at 1153. And even apart from the level-of-generality problem, the magistrate judge's decision is puzzling. Far from condemning what the officers did, our precedent suggests that they behaved reasonably—we have said that seeking out paramedics can be a reasonable response to a detainee's medical needs. *See Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 599 (7th Cir. 2011).

For the sake of completeness, we stress that the officers' conduct did not fall into the rare category of conduct so egregious that it "obviously" violated a clearly established right. *See Reed v. Palmer*, 906 F.3d at 547. Qualified immunity attaches unless not even one reasonable officer, placed in the defendants' shoes, would have thought that her conduct was lawful. *Plumhoff*, 134 S. Ct. at 2023. Given this standard, a conclusion that the officers' conduct "obviously" violated Royal's clearly established right would mean that all reasonable officers would know that they were required to ignore Royal's denials, ignore his lucidity and lack of symptoms, ignore the paramedics' medical opinion, and send Royal to the hospital anyway. We do not adopt that far-fetched position.

The officers' conduct did not violate clearly established law, so we REVERSE the magistrate judge's ruling and REMAND with instructions to enter summary judgment for the defendants.