**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2020[*]
Decided March 20, 2020

*Before*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1352

| | |
|---|---|
| DANIEL A. TROYA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| *v.* | No. 2:17-cv-00162-JRS-DLP |
| WILLIAMS E. WILSON, et al., | James R. Sweeney, II, |
| *Defendants-Appellees.* | *Judge.* |

### O R D E R

Daniel Troya, a federal inmate in Indiana, had surgery to remove hemorrhoids. Contending that the prison's medical staff deliberately ignored his medical needs in the wake of surgery, Troya filed this *Bivens* action. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Because no reasonable juror could find that the defendants recklessly ignored Troya's post-surgical needs, we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Troya had a successful hemorrhoidectomy. Afterward, his surgeon prescribed a painkiller and a stool softener, though he advised Troya that he could use an over-the-counter stool softener. He told Troya that "[s]ome pain and swelling," constipation, and "a small amount of rectal bleeding" are "normal" after surgery. He instructed Troya to consume "full liquids today," to "increase to soft diet tomorrow [and] regular diet in one week," and to "drink plenty of fluids to keep the bowels soft." The surgeon also urged Troya to contact the hospital in two days if he had not had a bowel movement.

When Troya returned to prison, a nurse evaluated him. As the surgeon wanted, she ordered from the prison's pharmacy the painkiller and stool softener. And like the surgeon, she told Troya to drink plenty of fluids and eat soft foods. Troya received the painkiller (for which constipation is a likely side-effect) but not the stool softener, which took a few days to arrive. He received his regular diet from the prison.

Troya next met with a physician assistant. Three days after the surgery, he told her that the pain and bleeding were resolving, but he had not received the stool softener or had a bowel movement. The assistant told Troya that "someone" dropped the ball on delivering the prescribed stool softener that the nurse had ordered. She reminded him that he could buy an over-the-counter softener, which the surgeon deemed acceptable, at the commissary. He did so later that day. She also placed a second order with the pharmacy for the prescribed softener and ordered a laxative. Like the surgeon, who had advised Troya to wait two days after beginning his post-surgical treatment before contacting the hospital for next steps, the assistant told Troya to take the drugs and call her in two days. When the assistant learned, after those two days, that Troya still had no bowel movement, she ordered two doses of magnesium citrate, a strong laxative. The second dose would be administered only if necessary three hours after the first.

Troya received his laxative that evening from nurses. The first dose did not move his bowels, though he reported pain, cramping, and disorientation. He received the second dose on schedule. That night Troya became ill. Prison staff found him in the fetal position surrounded by vomit and blood; he also had some blood near his rectum and an elevated pulse and blood pressure. Medical staff rushed Troya to a hospital. There he received another powerful laxative, intravenous fluids, and a liquid diet to treat him for "moderate constipation." He remained there for three days.

Troya decided to sue. He alleged that the two prison nurses, the physician assistant, prison administrators, and a "John Doe" nurse violated the Eighth Amendment by ignoring his surgeon's advice. *See Carlson v. Green*, 446 U.S. 14 (1980)

(recognizing Eighth Amendment claims in *Bivens* action). The district court screened the complaint, *see* 28 U.S.C. § 1915A, and dismissed the John Doe defendant, reasoning that under *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997), a plaintiff cannot proceed against an unknown defendant. During discovery, Troya moved four times for recruited counsel. The court denied the motions, ruling that Troya was competent to proceed pro se, given the nature of his claims, his GED and general health, and his "very well-written and reasoned" filings (prepared with a fellow inmate's help). The court said that it would reconsider recruiting counsel "at trial or at other points in the case" if Troya's self-representation became difficult. It later entered summary judgment for all defendants, ruling that no reasonable jury could find that Troya's constipation was a serious medical condition and, in any case, no defendant was indifferent to it.

On appeal, Troya contends that he had a serious need for post-surgical care that the defendants ignored. Even a layperson, he argues, would know to follow the surgeon's orders to get him a stool softener and soft-food diet immediately; the failure to do so led to the emergency-room visit and three days at the hospital.

To survive summary judgment on his deliberate indifference claims, Troya needed to supply evidence that would permit a jury to find that he had an objectively serious medical condition that the defendants deliberately ignored. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). We review de novo the district court's conclusion that he failed to do so. *See Petties*, 836 F.3d at 727.

We may assume, as Troya argues, that the district court too narrowly construed his medical condition as simply constipation, rather than post-surgery recovery. An inmate's medical condition is serious when a physician prescribes treatment to avert "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017). We will assume as a factual matter that this covers Troya's situation. To recover, his surgeon advised Troya to take a painkiller, use a stool softener, eat soft foods, drink liquids, and then call for help later, if needed, to reduce the pain, rectal bleeding, and constipation that normally follow any hemorrhoidectomy.

But we agree with the district court that no reasonable juror could conclude that the defendants deliberately ignored the surgeon's advice for recovery. We begin with the nurse who saw Troya upon his return from surgery. On Troya's first day back in prison, this nurse followed the surgeon's advice and ordered the prescriptions for the painkiller and stool softener. True, the pharmacy did not deliver the stool softener until

a few days later, but no evidence shows that the nurse caused that delay. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (prison officials not liable under Eighth Amendment if "remedial step was not within their power"). The nurse also followed the surgeon's advice about Troya's diet; she advised Troya to drink liquids and eat soft foods. Troya does not contend that his regular diet lacks soft foods, so the nurse did not ignore the doctor's order to make soft foods available.

Next, Troya contends that a jury could find that the two nurses deliberately ignored his needs by giving him magnesium citrate after he had been constipated for five days. We disagree. The nurses permissibly followed orders from the physician assistant to treat prolonged constipation. The assistant told them to administer the drug in two doses, with the second dose only if, as happened, the first did not induce a bowel movement. And they did so. Furthermore, no one told the nurses to stop the treatment if, as Troya reported, he had pain and cramping from the initial dose. Nurses who follow medical orders that, as here, are not obviously wrong have complied with the Eighth Amendment. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012).

We now turn to the physician assistant who, Troya argues, recklessly ignored his surgeon's advice; we conclude that no jury could reach that finding. When the assistant met with Troya two days after his surgery and learned that he had not received a stool softener or had a bowel movement, she reasonably implemented the surgeon's protocol. She reordered the prescription, reminded Troya that he could use the softeners from the commissary, and thus enabled him to get the treatment that the surgeon wanted him to have for two days before taking next steps. When she learned after those two days that Troya's status was unchanged, she again took reasonable steps: she prescribed a strong laxative—treatment later validated by the hospital, whose care Troya does not denigrate. Thus, the physician assistant did not recklessly ignore Troya's needs. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (To infer deliberate indifference, a treatment decision "must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.").

Next, we address Troya's claim against the prison administrators. Troya offered no evidence that they even knew about his condition or were personally involved in his care, so they cannot be liable. *See Estate of Miller v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). And as managers of caregivers, they are likewise not personally responsible for Troya's care. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Two final issues remain, the first of which is Troya's contention that the district court erred in denying his requests for counsel. He argues that the court mistakenly found that he was competent to represent himself even though a fellow inmate had prepared his filings and he needed an attorney to obtain a medical expert. We review the decision to deny counsel for abuse of discretion, *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc), and no abuse occurred here. The district court applied the correct legal standard when it concluded that Troya could represent himself given his GED, health, and competent filings. The court knew that Troya had the help of a fellow inmate, and it assured him that it would reconsider recruiting counsel if circumstances changed. We recognize that counsel can help a prisoner secure an expert, but Troya's case was not prejudiced by the lack of an expert. His claim turns on his contention that the defendants ignored his surgeon's advice. As we have explained, the defendants did not recklessly disregard that advice: the nurses ordered the required drugs immediately (even though Troya could have obtained a stool softener himself); and as the surgeon wanted, the physician assistant waited for two days after Troya began taking those drugs before responding to his constipation. We thus have no reason to believe that recruited counsel would have changed the outcome of the case. *See id.* at 659.

Finally, Troya challenges the dismissal of the John Doe defendant. He argues that the court should have permitted him to proceed against the unnamed nurse. But the court dismissed the claim without prejudice, and when Troya later learned the nurse's name, he could have moved to amend his complaint to add the defendant. Thus, the court's decision was permissible. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996) (court may "dismiss[] the complaint without prejudice" if defendant's identity is initially unknown).

The judgment of the district court is therefore AFFIRMED.