NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 7, 2020[*]
Decided December 30, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1615

| | |
|---|---|
| KIRK SZOPINSKI,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-CV-437-JPS |
| JOHN KOONTZ, et al.,<br>    *Defendants-Appellees*. | J. P. Stadtmueller,<br>*Judge*. |

**O R D E R**

Kirk Szopinski, a Wisconsin prisoner, swallowed pieces of his eyeglasses after prison staff did not respond to his threats to do so. He sued several nurses and correctional officers, alleging that they violated the Eighth Amendment by failing to prevent his injuries or provide adequate medical care afterward. *See* 42 U.S.C. § 1983. The district court entered summary judgment for the defendants, and we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

We recount the factual record in the light most favorable to Szopinski. *Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). Szopinski has a history of mental illness and self-harm. While incarcerated, he has swallowed foreign bodies on at least five occasions, including pieces of his eyeglasses once before.

Overnight on January 5, 2018, Szopinski's housing unit at Waupun Correctional Institution was loud and chaotic, and at one point guards dispersed gas to take an inmate from his cell. Szopinski began calling for help while John Koontz, a sergeant, and Gwendoline Vick, a nurse, were administering an inhaler to the prisoner in the adjacent cell. Szopinski shouted that he needed to be placed under observation because he was going to harm himself, but they did not respond. As they were leaving, Szopinski yelled that he was going to hurt himself by swallowing his glasses if he wasn't put on observation. They again ignored him. (Koontz and Vick deny hearing him, but, like the district court, we construe this fact in Szopinski's favor.)

Shortly after Koontz and Vick left, Szopinski used the emergency call button in his cell to contact the control unit, staffed at the time by correctional officer Michael Lueneburg. Szopinski said that he was going to swallow his glasses and wanted to be placed on observation to ensure his safety. But Lueneburg replied that he "had other issues to deal with," and unless Szopinski actually hurt himself he "did not care." Szopinski then swallowed one temple of his glasses. Lueneburg denies that this call occurred, but, again, the district court assumed it did, as do we.

About 20 minutes later, correctional officer Abigail Gottschalk walked past Szopinski's cell. He told her that he had swallowed one of his glasses temples and that he would swallow the other and cut himself if they did not remove him from his cell. He then threw his broken glasses at his cell door. Gottschalk had monitored Szopinski after he swallowed a foreign object less than six months earlier. She walked away without saying anything but reported Szopinski's comments to Koontz, her supervisor. Moments later, Szopinski swallowed the other temple of his glasses.

Szopinski again used the emergency intercom and informed Lueneburg that he had swallowed parts of his glasses. Lueneburg notified Koontz, who then removed Szopinski from his cell. Vick, the nurse, examined him and concluded that he did not require immediate medical attention. An officer called psychological services staff, who approved him for observation status. The next day, Szopinski went to the hospital for a dislocated finger. A doctor determined that he required no immediate treatment for ingesting the foreign bodies but instructed him to follow up if he did not pass them

within one to two days. The objects ultimately remained in his stomach for three months until he received an endoscopy to extract them; in the meantime, he experienced stomach pain.

Szopinski sued, alleging that Koontz, Vick, Lueneburg, and Gottschalk violated the Eighth Amendment by failing to prevent him from swallowing his glasses, and that Vick and others provided constitutionally inadequate medical care in the aftermath. In granting the defendants' motion for summary judgment, the district court determined that Koontz and Lueneburg had no reason to know that Szopinski had not made a "hollow threat" to get placed on observation, or that the threatened action presented a serious risk of harm.[1] Nothing suggested a need to "drop everything to run to Szopinski." Further, Gottschalk responded appropriately by notifying a supervisor after Szopinski told her about the glasses, which led to a prompt response. Finally, the court concluded that no reasonable jury could find that any defendant was deliberately indifferent to his medical needs after the incident.

On appeal, Szopinski challenges the grant of summary judgment on his claims that Koontz, Vick, Lueneburg, and Gottschalk were deliberately indifferent to his risk of self-harm. (He does not press any argument about his medical treatment after the incident, so we affirm the judgment as to the medical-care claims against Vick, Gregory Strunz, and Chrystal Marchant. *See Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020).) Prison officials can be held liable if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Their duty extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018).

Szopinski first argues that the district court erred by concluding that no reasonable jury could find that Koontz and Lueneburg were deliberately indifferent by failing to "drop everything" to respond to his threat. But we agree with the district court. Szopinski did not present any evidence that Koontz, Vick, or Lueneburg were aware of his history of mental illness or self-harm, or that they had any other reason to believe that his threats to harm himself were genuine, rather than a manipulative ploy to get placed under observation. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425,

---

[1] The district court did not mention Szopinski's claim against Vick for failing to prevent his self-harm, though he argued it at summary judgment. He continues to press it on appeal, so we will address it.

428 (7th Cir. 2017); *Collins v. Seeman*, 462 F.3d 757, 761 n.2 (7th Cir. 2006). Ignoring "an insincere suicide threat from an inmate wanting nothing more than attention" does not confer liability under the Eighth Amendment. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

Furthermore, Szopinski swallowed the objects only minutes after first making his threats. Koontz and Vick were attending to the medical needs of another inmate when he first called out to him, and the record shows that it was a chaotic night on Szopinski's unit. Given the relatively non-emergent nature of Szopinski's threat, and the absence of evidence that the defendants knew he was likely to follow through, we agree with the district court that no reasonable jury could find that their failure to immediately attend to him shows deliberate indifference. *See Pulera v. Sarzant*, 966 F.3d 540, 555–56 (7th Cir. 2020) (finding response to attempted suicide was reasonable given chaotic circumstances though "[p]erhaps the officers could have acted faster" because "the Constitution does not demand perfection"). And, as the district court noted, when Koontz learned that the threat was materializing, he responded promptly.

Szopinski next argues that the district court erred in entering summary judgment for Gottschalk, the officer who spoke to him after he swallowed the first temple of his glasses and before he swallowed the second. But, as the district court noted, Gottschalk immediately notified her supervisor about Szopinski's remarks, and he was evaluated within 20 minutes of speaking to Gottschalk. A defendant cannot be liable if they respond reasonably to a risk, even if the harm was not averted. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 424 (7th Cir. 2017). Perhaps it would have been better for Gottschalk to stay with Szopinski and summon help to his cell, but Gottschalk's actions do not reflect the state of mind necessary to demonstrate deliberate indifference, rather than (at most) negligence.

Finally, Szopinski challenges the district court's denial of his motion for sanctions against the defendants for failing to preserve video evidence despite a timely request. Because the district court accepted Szopinski's version of events for purposes of summary judgment, however, it was not an abuse of discretion to deny sanctions based on a lack of any prejudice.

AFFIRMED