In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2489

RONALD JEROME BEAL,

*Plaintiff-Appellant,*

*v.*

BRIAN FOSTER and RUSSELL SCHNEIDER,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14 C 229 — **Aaron E. Goodstein**, *Magistrate Judge.*

SUBMITTED SEPTEMBER 2, 2015 — DECIDED OCTOBER 2, 2015

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge.* The plaintiff, an inmate of a Wisconsin state prison, filed suit under 42 U.S.C. § 1983 against the prison's warden (Foster) and a prison guard (Schneider), alleging in his complaint that Schneider had inflicted cruel and unusual punishment on him. The district court dismissed the complaint at "screening," 28 U.S.C. § 1915A— which is to say before any response by the defendants. The

ground of the dismissal was failure to state a claim; the magistrate judge (presiding with the consent of the parties) stated that "standing alone, verbal harassment of an inmate does not constitute a constitutional violation."

Neither in the district court nor in this court has the plaintiff mentioned defendant Foster, the warden, so his dismissal from the suit was proper; not so the dismissal of Schneider.

The proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect. Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash." The harassment in both cases is purely verbal, yet as cruel (and, one hopes, as unusual) as in cases of physical brutalization of prisoners by guards. To attempt to draw a categorical distinction between verbal and physical harassment is arbitrary. In short, "the alleged pain [sufficient to constitute cruel punishment] may be physical *or psychological*." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (emphasis added).

So saying, we are mindful of cases, including our decision in *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), which say that "standing alone, simple verbal harassment does not constitute cruel and unusual punishment." But it is

unclear what "simple" is intended to connote. In our hypo-thetical examples, the verbal harassment is "simple" in the sense of being brief, lucid, and syntactically simple. But what is simple can also, as in our two examples, be devastating. In *DeWalt* the plaintiff had alleged that a prison officer had "made a series of sexually suggestive and racially derogato-ry comments to [the plaintiff] regarding certain female teachers at the prison schools." *Id*. at 610. This verbal har-assment was directed, to a significant degree, at the female teachers rather than at DeWalt, and second-hand harassment may be too "simple" to state a claim of cruel and unusual punishment, whereas the lies in our two hypothetical cases were aimed directly and hurtfully at the prisoner. But "sim-ple" is the wrong word; what is meant is "fleeting," too lim-ited to have an impact.

Simple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment. See, e.g., *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986). But some does; and so consider the allegations in this case that de-fendant Schneider "made verbal sexual comments directed towards inmate Brian Anthony, telling Ronald Beal to place his penis inside Brian Anthony," and that "on several prior occasions" Schneider had urinated in view of the plaintiff (by leaving the bathroom door open) and of other inmates, looking at them "while smiling." These are the only allega-tions of the complaint, but one can imagine how they might have been amplified had the magistrate judge not terminat-ed the suit so abruptly. The plaintiff attempted in his appeal brief to amplify the first allegation, stating that what Schnei-der had said to another inmate—presumably Anthony—in

the presence of the plaintiff and other inmates was that if the plaintiff would "put his Weiner [penis]" in the other inmate's mouth the inmate would smile.

The remarks attributed by the plaintiff to Schneider, including the "smile" references and the display of Schneider's own penis in his repeated public urinations ("recurrences of abuse, while not a prerequisite for liability, bear on the question of severity," *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015)) could have been understood by the inmates as implying that the plaintiff is homosexual. The fact that Schneider is a Sergeant may have amplified the impact of his remarks.

In his appellate filings the plaintiff further claims that other inmates would harass him by calling him names such as "punk, fag, sissy, and queer," all of course derisive terms for homosexuals and possibly inspired or encouraged by Schneider's comments—and we note in this connection that the complaint charges the two defendants (realistically, though, just Schneider, not the warden) with sexual harassment. Conceivably the plaintiff feared that Sergeant Schneider's comments labeled him a homosexual and by doing so increased the likelihood of sexual assaults on him by other inmates.

The plaintiff claims to have experienced severe psychological harm as a result of the incidents described in his complaint—psychological harm that induced him to seek "psych service" help repeatedly from the prison's Clinical Services division. He has filed records of these visits and also proof that he filed a grievance with the prison concerning Schneider's comments and that on May 24, 2013, the prison upheld the grievance. Though it has been more than two

years since that ruling, the plaintiff states without contradiction that he's been unable to learn what findings emerged from the grievance proceeding and whether any punishment was imposed on Schneider for his misconduct. Those findings might either strengthen or weaken his case. The magistrate judge should have ordered the defendants to produce them.

And he erred in saying that "the plaintiff alleges only verbal harassment." Urinating isn't verbal. We can imagine, as suggested in the preceding paragraph, that the plaintiff was seriously upset by Schneider's nonverbal as well as verbal behavior, which may have made him a pariah to his fellow inmates and inflicted significant psychological harm on him.

A certain latitude should be allowed in the interpretation of complaints filed by pro se prisoner litigants, such as the plaintiff in this case, whose legal knowledge and expressive skills are palpably deficient. This is a case in which before dismissing the complaint the district court should have considered seeking clarification and amplification. In *Williams v. Wahner*, 731 F.3d 731, 734 (7th Cir. 2013), we pointed out that "many prisoners can explain themselves orally but not in writing. They may be illiterate in English, or they may simply be such poor writers that they can't convey their thoughts other than orally. So we can understand a judge's wanting to clarify an unclear pro se complaint by interviewing the plaintiff," provided, as we explain in *Henderson v. Wilcoxen* (7th Cir. 2015) (issued today) that a transcript or recording of the interview (which will usually be conducted telephonically) is made. Where appropriate, hearings can be a useful means of "trying to determine what the plaintiff is alleging."

*Williams v. Wahner*, *supra*, 731 F.3d at 734. But as *Henderson* and *Williams* both emphasize, and we take this opportunity to re-emphasize, the interview must be limited to elucidating the plaintiff's claim, and not allowed to become a determination of its merits. The judge who after the hearing decides there is nothing to the prisoner's case, and therefore dismisses it on a section 12(b)(6) motion or at screening under 28 U.S.C. § 1915A, converts the interview to an ex parte adjudication of the merits, and that is improper, as stressed in the two cases just cited. But at the same time, expecting a pro se prisoner to be able to explain his case without some prodding, some guidance, by the presiding judicial officer will often be unrealistic. A judge who does not recruit a lawyer for the pro se in such a case should at least consider making a modest effort to assist the pro se in articulating his claims.

We don't hold that the magistrate judge in this case had to help the plaintiff. The errors that require a remand for further proceedings—that made the dismissal of the complaint premature—is the magistrate judge's mistaken belief that the only harassment alleged was verbal, and his further, unexplained belief that the verbal harassment was nonactionable because it was "simple," which without explanation is inscrutable.

REVERSED AND REMANDED