**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 19, 2019[*]
Decided February 28, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 18-1550 & 18-1810

| | |
|---|---|
| ROGER ALLEN COSE, | Appeals from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 14-cv-540-jdp |
| | |
| MARY GORSKE, *et al.,* | James D. Peterson, |
| *Defendants-Appellees.* | *Chief Judge.* |

## O R D E R

Roger Cose, a Wisconsin prisoner, brings two sets of claims under the Eighth Amendment against medical officers. The district court dismissed his first claim, which alleges that a nurse denied Cose's request for a lower bunk, despite knowing that his safety depended on granting it. Later, the court entered summary judgment against

---

[*] Defendant Belinda Schrubbe was not served in the district court and is not participating in this appeal. We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Cose on his second set of claims, which he brought against his treating nurse and physician. We agree with the district court that Cose failed to establish a triable dispute on those claims, but because Cose sufficiently alleged that the nurse deliberately ignored his need for a lower bunk, we vacate the dismissal of that claim.

Cose broke his left leg in a motorcycle accident years ago, and as a result his legs have differing lengths. An X-ray taken when Cose was first incarcerated reveals some fractures. After transferring prisons in 2003, he told his treating nurse, Mary Gorske, about ongoing pain in his left leg. She reviewed his old X-ray, referred him to an orthopedic specialist, and prescribed ibuprofen. (Cose never received the drug; six months later, Gorske changed Cose's prescription to require him to buy it.) He saw the orthopedic specialist eight months later, a month after he complained to Gorske about the delayed appointment. The specialist ordered an updated X-ray of Cose's left leg. That X-ray was not taken until after they met. The specialist received and examined Cose's old X-ray.

After that exam, the specialist ordered certain follow-up measures. First, she wanted Cose to see an orthotist for modified shoes to treat his leg-length discrepancy. Second, she wanted Cose's treating physician, Dr. Charles Larson, to have Cose return to see her for another appointment after he received his orthotic footwear. Dr. Larson noted and agreed with these instructions. Cose saw the orthotist and was fitted for a modified shoe, but he never had a follow-up appointment with the specialist.

Dr. Larson reviewed the radiology report of the new X-ray that the specialist had ordered but not seen. Comparing the new X-ray to the old one, the report observed that Cose's previous breaks were "unchanged." It also noted that an "overriding" fibular fracture, which the old X-ray report had not mentioned, was "unchanged." Based on his review, Dr. Larson did not provide more treatment for Cose's left leg. He said that Cose "was already receiving the necessary medical treatment for a pre-existing condition with no recommendation from his orthopedist … to treat differently on the basis of the x-ray report."

Ten years later, Cose received more treatment for his left leg. When he complained to a prison nurse about leg pain in 2013, a prison nurse reviewed the old X-rays. She told him that the second X-ray revealed that his left leg had an untreated

break (the fibular fracture) that was at least 10 years old. Cose promptly saw an orthopedist and was "casted for a solid ankle [ankle-foot orthotic] to the left leg."

During this time, Cose had sought—and for years received—a lower-bunk pass because he could not safely reach an upper bunk. In 2011, Belinda Schrubbe, a nurse, decided requests for lower-bunk passes. (Cose alleged this in his initial complaint, and we construe his later complaint as incorporating that earlier allegation because this was Cose's "clear intention, prompted by statements in a prior order of the district court" to add specific facts. *See Otis v. Demarasse*, 886 F.3d 639, 644–45 (7th Cir. 2018)). Cose alleges that when he asked Schrubbe to renew his pass that year, she read his medical record. It states that he is "unable to run, jump or climb without great difficulties" and had received a lower-bunk accommodation for the last eight years. Based on these records, Schrubbe had approved his previous request for the pass. Yet, with the record unchanged, Schrubbe denied his latest request for a pass. As a result, Cose fell while trying to climb into an upper bunk, seriously injuring himself.

Cose sued Schrubbe, Gorske, and Larson for deliberate indifference to his medical condition in violation of the Eighth Amendment. The district court screened and dismissed his claim against Schrubbe, *see* 28 U.S.C. § 1915A, because he did not allege that she knew about his fractured fibula when she denied him a lower-bunk pass. The court later entered summary judgment for the defendants, concluding that a reasonable jury could not find that either defendant knew about his broken fibula and deliberately disregarded it. Cose moved to alter or amend the judgment under Rule 59(e), citing "new evidence": his medical file contained other inmates' records and other errors, suggesting that summary judgment was improper because the defendants relied on evidence that was "corrupt." The judge denied his motion, reasoning that the evidence Cose cited was not "new" (because Cose had received it months earlier) and not material (because he had not shown that the errors affected the court's analysis).

On appeal, Cose first challenges the dismissal of his claim against Schrubbe. He argues that, because he alleged that Schrubbe reviewed his medical records, she knew that he needed a lower bunk for his safety; her refusal to allow that accommodation therefore reflected deliberate indifference to his medical needs. To state a claim that a prison official violated the Eighth Amendment through deliberate indifference to medical needs, Cose must allege that (1) an objectively serious medical condition

created a substantial risk of harm, and (2) the official knew about the risk but recklessly disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Cose did so. He alleged that Schrubbe knew that he was unable to reach a top bunk safely and that requiring him to do so risked "great difficulties." This is sufficient. *See Powers v. Snyder*, 484 F.3d 929, 931–32 (7th Cir. 2007); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The district court's rationale for dismissing the claim focused on whether Cose had pleaded Schrubbe's knowledge of a particular fracture in his left leg. That's not the point of Cose's claim, however. He alleged that Schrubbe knew from his medical records that he could not safely use an upper bunk but assigned him one anyway. That states a plausible claim, and no more is required at the outset of a suit.

We may remand the case as to Schrubbe, though she was not served in the district court and did not participate in this appeal. *See Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015). The screening provision in 28 U.S.C. § 1915A required the district court at the outset of the litigation to review Cose's complaint to identify whether Cose had stated a claim against Schrubbe. Thus, any determination before service of process was necessarily provisional, and when Schrubbe is served, she will retain all of her substantive and procedural rights, including the right to move for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Cf. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51, 356 (1999) (rejecting interpretation of 28 U.S.C. § 1446 that would "render removal the sole instance in which one's procedural rights slip away before service of a summons").

Cose next challenges the entry of summary judgment for Dr. Larson. He first argues that the evidence suggests that Dr. Larson recklessly failed to seek a follow-up meeting with the orthopedic specialist who had treated Cose before the new X-ray was taken and therefore needed to see the new X-ray to provide proper treatment. But only an "'obdurate refusal' to engage specialists" allows an inference of reckless indifference. *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)); *Ortiz v. Webster*, 655 F.3d 731, 735 (7th Cir. 2011). The record shows that Dr. Larson reviewed and agreed with the specialist's recommendations, studied the new X-ray report, and fulfilled the specialist's instructions for orthotic footwear. The only failure was that a second meeting with the specialist was not *scheduled*. But even if we assume that Dr. Larson was responsible for scheduling that appointment or

mistakenly thought that the specialist had already seen the new X-ray, nothing suggests that this failure was deliberate, and negligence "does not give rise to a constitutional violation." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Cose's two other accusations of Dr. Larson's shortcomings are also unavailing. He contends that Dr. Larson recklessly read only the X-ray report and not the actual X-rays. But Cose has not offered evidence suggesting that relying on X-ray reports departed so far from accepted medical standards that it reflected an absence of professional judgment. *See Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). The court also correctly determined that Cose offered no evidence that Dr. Larson ignored Cose's complaints of pain. *See Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003).

That brings us to Cose's argument that the district court erroneously entered summary judgment for Gorske. He first argues that for seven months Gorske delayed scheduling his appointment with the orthopedic specialist, but Cose has not furnished evidence that Gorske was responsible for that delay. *See Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018). And even if she were responsible, the record suggests at worst negligence because she acted promptly once Cose told her that he had not yet had an appointment. *See Giles v. Tobeck*, 895 F.3d 510, 513–14 (7th Cir. 2018). Cose also blames Gorske for not scheduling the follow-up appointment with the specialist, but nothing suggests that Gorske even knew that he was supposed to have a second appointment.

Cose next argues that Gorske showed deliberate indifference to his need for pain medication. He first observes that after Gorske prescribed ibuprofen to him for pain, he did not receive the medication for six months. But he concedes that she prescribed pain medication to him, so she was not ignoring his complaints of pain, and no evidence suggests that she was responsible for bringing the drugs to him or that she prevented others from doing so. Therefore, no jury could find her deliberately indifferent. Cose also contends that Gorske's decision to change his ibuprofen prescription to "buy own" was itself deliberate indifference. But he submitted no evidence that requiring him to buy his own pain medicine was inconsistent with a reasonable treatment plan.

We close with two procedural matters. First, Cose challenges the denial of his motion under Federal Rule of Civil Procedure 59(e) to amend the judgment in light of the evidence of errors in his medical file. We review that ruling for abuse of discretion.

*Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505 (7th Cir. 2016). Because Cose had access to these records when the defendants moved for summary judgment, he presented no "newly discovered evidence" that required the district court to grant his motion. *See Sigsworth v. City of Aurora, III*, 487 F.3d 506, 511–12 (7th Cir. 2007). Second, Cose asserts that the district court should have sanctioned the defendants for allowing the destruction of the original X-rays. Even if we assume that the defendants possessed the X-rays during the litigation (the record suggests otherwise), Cose has presented no evidence that the X-rays were destroyed in bad faith. Without such evidence, the denial of sanctions was not an abuse of discretion. *See Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013).

We VACATE the dismissal of Cose's claim against Schrubbe and REMAND that claim for further proceedings; we AFFIRM in all other respects.