In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3378

JEFFREY D. LEISER,

*Plaintiff-Appellee,*

*v.*

KAREN KLOTH, Correctional Sergeant, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cv-00768-slc — **Stephen L. Crocker**, *Magistrate Judge.*

ARGUED SEPTEMBER 5, 2018 — DECIDED AUGUST 1, 2019

Before EASTERBROOK, HAMILTON, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Jeffrey Leiser was an inmate at the Wisconsin Stanley Correctional Institution where Sergeant Karen Kloth was employed. Leiser, who was later diagnosed with Post Traumatic Stress Disorder while at Stanley, alleged that beginning in 2013 he self-reported his disorder to Kloth and "informed" her not to stand directly behind him because doing so triggered his mental health symptoms. He

claims Kloth did not comply with his request but instead increased the amount of time she stood behind him while patrolling common areas. Leiser filed this suit against Kloth, her supervisor, and the warden, claiming that Kloth's behavior violated the Eighth Amendment's prohibition against cruel and unusual punishment. The district court denied the defendants' motion for summary judgment after determining they were not entitled to qualified immunity because Leiser had a well-established right to be free from intentionally inflicted psychological harm. The defendants filed this interlocutory appeal, asking us to resolve the legal question of whether they were, in fact, entitled to qualified immunity. We reverse. Defendants are entitled to qualified immunity. At the relevant times, it did not violate clearly established constitutional law for non-medical correctional staff to refuse to provide a prisoner with what amounts to a medical accommodation that had not been ordered by medical staff and the need for which was not obvious to a layperson.

I.   *Facts*

We construe the evidence in the light most favorable to Leiser as the non-moving party. See *Lovett v. Herbert*, 907 F.3d 986, 990 (7th Cir. 2018). At all times relevant, Jeffrey Leiser was an inmate in the custody of the Wisconsin Department of Corrections, housed at the Stanley Correctional Institution. Sergeant Karen Kloth was a correctional officer who worked in Leiser's unit. Kloth reported to Unit Manager Paula Stoudt and in turn to Warden Reed Richardson.

Leiser was housed in Stanley's mental health unit. He struggled with numerous mental health issues, including at times suicidal tendencies. Especially relevant to this case, the psychological services staff eventually diagnosed Leiser with

Post Traumatic Stress Disorder ("PTSD") stemming from a sexual attack he suffered as a child. Leiser alleges that because of this attack, when someone stands directly behind him, he experiences flashbacks and may become angry, knock his head against a wall, break out in a sweat, yell, scream, and want to hurt whoever triggered the episode. Leiser told staff in the Psychological Services Unit he was experiencing PTSD symptoms as early as October 2014, but he was not diagnosed with the disorder until some time in the spring of 2015.

While at Stanley, Leiser met regularly with staff from the Psychological Services Unit. On March 30, 2015, he told his treating clinician that he could not tolerate people standing directly behind him and that his anxiety spiked when he was waiting in line for medications in the Health Services Unit. His psychiatrist then arranged for him to receive his medications directly from nursing staff, rather than after waiting in line, to avoid this discomfort. Leiser did not receive any other accommodation for his PTSD from the psychological staff. Stanley's Psychological Services Unit does not inform correctional officers of an inmate's clinical diagnosis if no accommodation is required.

At some point in 2013, well before his diagnosis, Leiser noticed that Sergeant Karen Kloth began standing behind him in common areas, close enough, he says, to trigger his PTSD. Leiser told Kloth that he suffered from PTSD and that he could not tolerate anyone standing so close behind him. Kloth responded by telling Leiser he would just have to "deal with it" because she could stand where she wanted.

After this exchange, Leiser claims, Kloth increased the amount of time she stood directly behind him. Leiser submitted declarations from three other inmates who testified that

Kloth stood directly behind Leiser "every time" she worked and that she would stand behind him until he started shaking and sweating. Another inmate, Loren Leiser (Leiser's brother) told Kloth that she should not stand behind Leiser because of his PTSD, explained his symptoms, and that it would be her fault if he "snapped on her." Leiser's witnesses testified that after Kloth stood behind Leiser, he would dump his tray and retreat to his cell where he would shake, sweat, and talk to himself. Leiser indicated he began skipping meals when Kloth was on duty to avoid the risk of experiencing his PTSD symptoms.

Notes from treating clinicians say that Leiser was having problems with unit staff standing behind him, but they do not indicate he ever identified it was Kloth. Leiser eventually complained in writing about Kloth's behavior to her supervisors, Stoudt and Richardson. Though the written complaints to Stoudt did not indicate Kloth was engaging in conduct which triggered his PTSD, the letter he wrote to Warden Richardson specifically requested that Kloth be prohibited from standing behind him for that reason. Neither Stoudt nor Richardson acted on these complaints.

Leiser sued under 42 U.S.C. § 1983 on November 30, 2015. Among other claims, Leiser alleged that Kloth was intentionally causing him psychological harm by repeatedly attempting to trigger his PTSD, which he said violated the Eighth Amendment's prohibition against cruel and unusual punishments. He also sued Stoudt and Richardson for failing to protect him from Kloth's behavior.

Following a mandatory screening of the in forma pauperis complaint under 28 U.S.C. § 1915A, the district court permitted Leiser to proceed on the Eighth Amendment claim against

Kloth and failure-to-protect claims against Stoudt and Richardson. The defendants later moved for summary judgment. They argued that Kloth's behavior did not rise to the level of cruel and unusual punishment, and even if it did, the evidence did not establish that the defendants knew that Leiser's PTSD was triggered when Kloth stood behind him. Regardless, they argued, defendants were entitled to qualified immunity because if there was a constitutional violation, the legal rule was not clearly established at the time of Kloth's alleged conduct.

The court denied the defendants' motion for summary judgment, despite acknowledging it was not persuaded that Leiser met the requirements discussed in *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003), that is, evidence that Kloth's actions were not done for a legitimate penological reason and were instead intended to humiliate and inflict psychological pain. The court held that a jury could find Kloth violated the Eighth Amendment when she increased the amount of time she spent standing behind Leiser after she learned of his PTSD. Regarding qualified immunity, the district court found that Leiser had a clearly established right to be free from intentionally inflicted psychological harm at the time of these events, making the defendants ineligible for qualified immunity. This interlocutory appeal followed.

II. *Analysis*

   A. *Appellate Jurisdiction*

We have jurisdiction to hear this appeal because "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the

absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); see also, e.g., *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). We review the denial *de novo*, considering whether the defendants were entitled to qualified immunity when viewing the facts in the light most favorable to Leiser as the non-moving party. *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017), citing *Estate of Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010).

Leiser contends we do not have jurisdiction because this appeal is really a "back-door effort" to contest facts, rather than to resolve an issue of law. "[A]n appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument." *Gutierrez v. Kermon*, 722 F.3d 1003, 1010 (7th Cir. 2013); see also *Gant v. Hartman*, 924 F.3d 445, 451 (7th Cir. 2019) (dismissing officer's appeal of denial of qualified immunity because his argument depended on disputed facts). For purposes of this appeal, however, appellants acknowledge that all issues of material fact must be resolved in Leiser's favor and reviewed in a light most favorable to him. See *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (defendant is not generally permitted to appeal denial of a summary judgment that involves mixed question of law and fact, "but where, as here, one side concedes the other's facts as to what happened, it is a question of law").

Leiser argues that the appeal focuses on the disputed fact of Kloth's intent, not a legal question, because the operative questions are whether Kloth stood behind Leiser *knowing* that this could trigger his PTSD and if so, whether this rose to the level of injury cognizable by the Eighth Amendment. Even framing the questions this way, we have jurisdiction.

Appellants concede—and we assume—for purposes of summary judgment that Kloth did know her conduct could cause Leiser psychological discomfort related to his PTSD. Whether an injury rises to a level "cognizable by the Eighth Amendment" is an issue of law that we have jurisdiction to decide. This appeal does not depend on disputed facts, so we have jurisdiction to hear this appeal. We now move on to whether the defendants were entitled to qualified immunity.

B. *Qualified Immunity*

Qualified immunity is a doctrine that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, qualified immunity does not shield a government official if the alleged conduct violates a right that was clearly established at the time. *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012).

To defeat a defense of qualified immunity, the plaintiff must show two elements: first, that the facts show "a violation of a constitutional right," and second, that the "constitutional right was clearly established at the time of the alleged violation." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017). We have discretion to choose which of these elements to address first. *Pearson*, 555 U.S. at 236. Because the second prong is dispositive here, we will address only whether the right at issue was clearly established under the circumstances the defendant faced. *Lovett v. Herbert*, 907 F.3d 986, 991–92 (7th Cir. 2018), quoting *Mason-Funk v. City of Neenah*, 895 F.3d 504, 507–08 (7th Cir. 2018).

While qualified immunity is an affirmative defense, once raised, the burden shifts to the plaintiff to defeat it. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). To meet his burden on this prong, Leiser needed to "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Howell*, 853 F.3d at 897, quoting *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). This requirement does not mean Leiser had to find a case "on all fours" with the facts here. *Howell*, 853 F.3d at 897, citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). He did, however, need to show some settled authority that would have shown a reasonable officer in Kloth's position that her alleged actions violated the Constitution. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right" meaning that "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). That is, the right must be clearly established to a degree of specificity such that a reasonable government official would be able to identify the violation with a specific set of facts.

In deciding a question of qualified immunity, the level of specificity at which the legal question is asked is often decisive, and it is possible to be too general and too specific. See, e.g., *Thompson v. Cope*, 900 F.3d 414, 421–22 (7th Cir. 2018). We must determine whether a right is clearly established "in light of the specific context of the case, not as a broad general

proposition." *Lovett*, 907 F.3d at 992, quoting *Mullenix*, 136 S. Ct. at 308. This requires us to consider "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308, quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308, see also *al-Kidd*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

We first look to whether the Supreme Court or this circuit has previously held that conduct analogous to the present case violates the right at issue. *Lovett*, 907 F.3d at 992. The lack of specific precedent is not necessarily fatal to a qualified immunity defense because the Supreme Court has recognized that "officials can still be on notice that their conduct violates established law … in novel factual circumstances." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377–78 (2009), quoting *Hope,* 536 U.S. at 741–42 (no qualified immunity when prison guards handcuffed inmate to hitching post for seven hours without regular water or bathroom breaks for his disruptive behavior, despite his having already been subdued). If no existing precedent puts the conduct beyond debate, we next consider if this is one of the rare cases, like *Hope*, where the state official's alleged conduct is so egregious that it is an obvious violation of a constitutional right. *Abbott v. Sangamon County*, 705 F.3d 706, 723–24 (7th Cir. 2013) (no qualified immunity for police officer for excessive force claims where officer tased nonviolent misdemeanant who did not respond to instructions to turn over after being tased a first time).

The district court determined that Leiser had "a clearly established right to be free from intentionally inflicted psychological harm." Leiser frames the question differently, as "whether Kloth subjected Leiser to calculated harassment unrelated to prison needs." Both of these statements are at too high a level of generality. See *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004) (remanding denial of summary judgment on qualified immunity because court of appeals found fair warning in general tests regarding prohibition of shooting fleeing suspects rather than the more "particularized" fact of shooting fleeing suspects "when persons in the immediate area are at risk from that flight").

As we see the case, the issue is whether it was clearly established that Kloth was constitutionally required to accommodate Leiser's specific and unique mental health need based solely on his self-reporting and demands of other inmates, absent instructions from the medical staff.

"The Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). This prohibition against cruel and unusual punishment of inmates includes both physical and psychological harm. See *Beal v. Foster*, 803 F.3d 356, 357–58 (7th Cir. 2015) (reversing dismissal of § 1983 claim against prison guard who allegedly made remarks labelling a male inmate as homosexual, allegedly causing inmate severe psychological harm due to worry of increased likelihood of sexual assaults, thus making it more than "simple verbal harassment"), quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Inmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (mentioning the Eighth Amendment protects against "calculated harassment unrelated to prison needs"); *King v. McCarty*, 781 F.3d 889, 892 (7th Cir. 2015) (reversing dismissal; inmate plausibly alleged see-through jumpsuit that exposed his genitals during transfer to new prison had no penological purpose and only intended to humiliate and inflict psychological pain in violation of Eighth Amendment); *Beal*, 803 F.3d at 359 (jury could find correctional officer's verbal and nonverbal harassment was cruel and unusual because it "may have made him a pariah to his fellow inmates and inflicted significant psychological harm"); *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) (reversing summary judgment for prison guards in light of inmates' allegations of strip searches publicly conducted in cold room with guards who did not change their latex gloves and made demeaning comments to inmates; genuine dispute over whether searches "were conducted in a harassing manner intended to humiliate and cause psychological pain"). However, "not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun*, 319 F.3d at 939.

Leiser argues that Kloth had a constitutional obligation to modify her movements around the common area to avoid standing directly behind Leiser after he informed her that this proximity to him exacerbated his self-reported PTSD. However, none of the cases from this circuit he relies upon have facts closely analogous to those here. Se *Davis v. Wessel*, 792 F.3d 793, 796 (7th Cir. 2015) (body restraints); *Mays*, 575 F.3d

at 649 (strip searches); *Delaney v. DeTella*, 256 F.3d 679, 681–82 (7th Cir. 2001) (conditions of confinement).

The cases Leiser cites from other circuits also fail to show this right was clearly established. The only authority he points to that deals with psychological harm rather than physical harm or threats is *O'Connor v. Huard*, 117 F.3d 12, 17 (1st Cir. 1997), where the First Circuit considered the denial of qualified immunity under a plain error standard because the defendant had failed to preserve the affirmative defense. There, a jury found for the former pretrial detainee who had claimed that a correctional officer deprived him of mental health medication and intentionally triggered his anxiety attacks. *Id.* at 15. The district judge denied the officer's motion for judgment notwithstanding the verdict, where she asserted for the first time that she was entitled to qualified immunity. The First Circuit affirmed the verdict for the plaintiff because the officer "never brought forward any evidence suggesting that her actions were objectively reasonable in light of [plaintiff's] clearly established due process right." *Id.* at 17. Though *O'Connor* presents closer facts than the other cases Leiser cites, it involved the denial of access to prescribed medications, which would clearly interfere with prescribed medical treatment. In addition, the differences in procedural posture and standard of review undermine his argument that the right at issue here was clearly established at the time of Kloth's conduct.

Because he does not provide an analogous case, we now consider whether Leiser established that Kloth's conduct was so outrageous that no reasonable correctional officer would have believed the conduct was legal. He did not meet this burden. As noted above, in some "rare cases," such as *Hope v. Pelzer*, where the constitutional violation is "patently

obvious," the plaintiffs may not need to cite closely analogous cases because "widespread compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). For example, in *Abbott v. Sangamon County*, qualified immunity did not apply despite the lack of analogous cases because it was clearly "unlawful to deploy a taser in dart mode against a nonviolent misdemeanant who had just been tased in dart mode and made no movement when, after the first tasing, the officer instructed her to turn over." 705 F.3d 706, 732 (7th Cir. 2013); cf. *Lovett*, 907 F.3d at 993 (not "egregiously" or "obviously unreasonable" to assign a severely intoxicated pre-trial detainee a top bunk from which he fell and died); *Kemp v. Liebel*, 877 F.3d 346, 353–54 (7th Cir. 2017) (qualified immunity applies on Free Exercise claim where no analogous case identified and it was not egregious or unreasonable for Jewish prisoners to be unintentionally denied religious services for several months after transfer to a new prison).

At the time of Kloth's conduct here, it was not clearly established that she was constitutionally required to avoid standing behind Leiser as a result of his self-reporting of a pending (albeit eventual) diagnosis. Such conduct, if intended to provoke a negative response from Leiser, may have been unprofessional and unjustified, but the law did not make clear that it amounted to cruel and unusual punishment. Leiser's claim here implies that prison staff have a constitutional obligation to modify the way they do their jobs based solely on an inmate's assertion that their actions elicit extreme psychological responses. We must recognize the risk that such a rule of law, which would apply without orders from prison medical staff, could create a real danger of inmates manipulating

correctional officers for purposes unrelated to their mental health.

This would be an entirely different case if Leiser had been diagnosed with PTSD and the medical staff had ordered correctional staff to provide an accommodation for Leiser that Kloth ignored. Generally, non-medical staff of jails and prisons must comply with medical directives, which includes mental health accommodations. *Mitchell v. Kallas*, 895 F.3d 492, 499 (7th Cir. 2018) ("An absence of treatment is equally actionable whether the inmate's suffering is physical or psychological."); *Arnett v. Webster*, 658 F.3d 742, 752–53 (7th Cir. 2011) (refusal to provide inmate with prescribed medication or to follow advice of specialists can violate the Eighth Amendment); *Ralston v. McGovern*, 167 F.3d 1160, 1161–62 (7th Cir. 1999) (reversing summary judgment because non-medical prison guard's refusal to comply with physician's therapy decision could be cruel and unusual).

While the lack of an accommodation directive from a psychiatrist should not be treated as permission to harass inmates in any manner, it is not unreasonable for a non-medical prison staff member to assume that a treating physician would have ordered an accommodation if one was necessary. See *Arnett*, 658 F.3d at 755 (recognizing non-medical prison staff "will generally be justified in believing that the prisoner is in capable hands" when relying on expertise of medical personnel); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As a practical matter, it would be unwise to require more of a nonmedical staff member" than reliance on prison medical staff, as "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments").

Kloth is entitled to summary judgment because Leiser did not establish that he had a clearly established constitutional right to an accommodation of a self-reported mental diagnosis without confirmation from medical staff or existence of a treatment plan. This conclusion means that defendants Stoudt and Richardson are also entitled to summary judgment. See, e.g., *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (failure-to-intervene claims failed where plaintiff's right to be free from certain interrogation tactics was not clearly established at the time).

With high numbers of inmates suffering from mental illnesses, the scope of prison medical and non-medical staffs' duties toward mentally ill prisoners is an issue we can expect to face often. We understand that the relationships between inmates and prison staff are not always the model of civility, but it is essential that correctional staff comply with orders from medical staff. Here there were no such orders, so Leiser has not established that Kloth's alleged conduct rose to an Eighth Amendment violation beyond reasonable debate at the time of her alleged conduct.

We REVERSE the district court's denial of summary judgment and REMAND with instructions to grant summary judgment in favor of the appellants.