NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 30, 2020[*]
Decided May 6, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3314

| | |
|---|---|
| AARON MILLER,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 15-cv-1077-SCW |
| WEXFORD HEALTH SOURCES, INC., *et al.*,<br>    *Defendants-Appellees.* | Stephen C. Williams,<br>*Magistrate Judge.* |

**O R D E R**

Aaron Miller, an Illinois inmate, developed bacterial and fungal infections at the site of an open abdominal wound where a feeding tube had been removed. He sued prison doctors and officials for deliberate indifference to his serious medical needs, as well as for retaliation under the First Amendment after he filed grievances over those needs. The district court ruled that the record did not support a finding of any constitutional violations and entered summary judgment for the defendants. We affirm.

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Upon his incarceration in 2011, Miller had already undergone several surgeries for gunshot wounds to his abdomen, necessitating a feeding tube being placed into his stomach. When the feeding tube was removed two years later, he was diagnosed with a gastrocutaneous fistula (an abnormal connection between the stomach and skin) that his surgeons expected to close on its own. He also had a ventral hernia (an opening in the abdominal wall muscles), for which he was told to follow up with a doctor for treatment. At that follow-up visit, he was told that he would not be a candidate for hernia-repair surgery until he lost 30 pounds.

In early 2015, a couple weeks after his transfer to Pinckneyville Correctional Center, Miller complained to a nurse of tenderness and burning from an open wound on his abdomen that was the size of a "small bean." He was evaluated two days later by Nurse Practitioner Angel Rector, who bandaged the wound after noting clear drainage and no sign of infection. At a follow-up visit two weeks later, Miller's wound was unchanged, and Rector referred him to a doctor.

Around this time Miller also complained of two episodes where he was made to carry heavy objects, which exacerbated his pain, increased the drainage from his wound, and caused blood in his stool. First, Correctional Officer Paul McGuire forced him to haul his mattress and laundry bag (approximately 30 pounds) from one housing unit to another. Miller objected because of his stomach injuries, even lifting his shirt to prove that he could not carry anything, but McGuire ignored his objections because medical staff had not prescribed a lifting restriction for him. Second, an unknown correctional officer made Miller carry an 80-pound property box up a flight of stairs.

In March 2015 Miller began receiving care from Dr. Vipin Shah, Pinckneyville's medical director. Dr. Shah reviewed Miller's medical records, learned about the fistula and hernia diagnoses, and then examined Miller's wound. Dr. Shah ordered that a drainage culture be tested; the test revealed a bacterial infection that Dr. Shah treated with antibiotics. Dr. Shah thereafter saw Miller every couple of weeks. At a visit the following month, Miller complained of continuing drainage, and Dr. Shah ordered that the bandages be changed twice a day. When Miller developed a fungal infection soon thereafter, Dr. Shah treated it with an antifungal medication and continued bandage changes. The following month Miller's fungal infection worsened, and he developed an additional bacterial infection. Dr. Shah prescribed an increased dose of the antifungal medication, an antibiotic, and daily bandage changes.

Miller says that by the summer he was no longer receiving all of the prescribed bandage changes. He attested that Correctional Officer Brandi Walla instructed nurses not to change his bandages in retaliation for grievances he had filed over his medical care. (Miller disputes the accuracy of medical records reflecting that he received regular bandage changes during this time.)

By late summer Dr. Shah identified drainage that appeared to come from deeper inside Miller's wound. Dr. Shah referred Miller to a general surgeon, who in turn recommended that he be seen by a trauma surgeon. In late fall a trauma surgeon evaluated Miller and recommended that the fistula be surgically repaired—a recommendation that was approved by collegial review (a board of doctors that reviews and approves medical requests). Miller underwent fistula surgery in early 2016. After he had healed, a nonparty doctor submitted a request to also repair his hernia. Collegial review denied the request, stating that conservative treatment—such as an abdominal binder—had not yet been tried for the hernia, and a 2015 CT scan had revealed the hernia was not "incarcerated" (meaning that the tissue was not trapped and thus did not require prompt medical attention).

Dissatisfied with the treatment of his fistula and hernia, Miller sued several nurses, Nurse Practitioner Rector, Dr. Shah, and Wexford Health Sources, Inc. (their employer). He asserted that the defendants acted with deliberate indifference when they provided insufficient bandage changes, denied him pain medication, delayed surgery for his fistula, and denied his request for hernia surgery. He also sued two correctional officers—McGuire for deliberate indifference when forcing him to carry heavy items despite his injuries and Walla for retaliating against him for filing grievances.

The defendants moved for summary judgment. Through his court-recruited attorney, Miller responded to the motions, but he did not dispute the defendants' facts or put forth his own facts, so the judge treated the defendants' factual submission as undisputed and entered summary judgment in their favor. *See* FED. R. CIV. P. 56(e)(2). Miller's claims against the medical defendants failed because the undisputed medical evidence showed that the nurses and doctor were at all times responsive to his complaints: They frequently cleaned and rebandaged his wound, prescribed antibiotics and antifungals, and when it became clear that his fistula would not heal, referred him for surgery. Further, the evidence showed that Miller's hernia was nonincarcerated and asymptomatic, so conservative treatment was appropriate. As for the deliberate-

indifference claim against Correctional Officer McGuire, the judge determined that the evidence could not support the conclusion that he had subjective knowledge of—let alone disregarded—any excessive risk to Miller's health by instructing him to move his property. Finally, regarding the retaliation claim against Correctional Officer Walla, the judge found that the evidence was undisputed that Miller was not deprived of medical care during the time Walla allegedly told nurses not to treat him and that Walla had not acted wrongly on account of Miller's grievances.

As a preliminary matter, Miller challenges the judge's decision to accept the defendants' statement of facts as undisputed. He believes that the judge deprived him of his right to have the facts considered in his favor. But he misunderstands the effect of the judge's ruling. The judge construed the defendants' undisputed facts in the light most favorable to him. And because his court-recruited attorney failed (as Miller agrees) to admit or deny the facts presented in the defendants' motion for summary judgment, the judge did not abuse his discretion to consider the defendants' factual submission undisputed for purposes of the motion. FED R. CIV. P. 56(e)(2); *see Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015).

On the merits, Miller's primary contention is that the judge failed to recognize three material factual disputes over whether the defendants were deliberately indifferent to his medical needs. The first concerns evidence of the painful infections that he developed, which Miller says establishes that the nurses had insufficiently changed his bandages. To avoid a summary judgment, however, Miller needed to present evidence that the defendants knew of and disregarded a serious risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Miller's medical records document that the defendant nurses changed his bandages as prescribed, and he points to no evidence that refutes this documented timeline. Nor does he call into question Dr. Shah's opinion that even if there were isolated instances when he did not receive a bandage change, these would not have affected the overall healing process.

Miller's second argument concerns what he sees as a deliberately indifferent three-year delay in receiving his fistula surgery. He argues that Dr. Shah must have known that his wound had to be treated surgically because his medical records (which Dr. Shah reviewed) reflected as much. But Miller needed to present evidence sufficient to show that Dr. Shah's initial decision to treat Miller without surgery was "so far afield of accepted professional standards as to raise the inference that it was not actually

based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). And nothing in Miller's medical records as of 2015, when Dr. Shah assumed his care, suggests that any provider believed Miller's fistula required surgical repair. Nor does Miller suggest that the treatment Dr. Shah prescribed before referring him for fistula surgery—courses of antibiotics, antifungals, and bandage changes that ultimately eliminated the infections Miller complained of—was so unreasonable that it represented a complete abandonment of medical judgment. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663–64 (7th Cir. 2016).

Next, Miller points to a supposed factual dispute over whether the defendants were deliberately indifferent when they refused to authorize hernia surgery in disregard of the recommendation by another prison doctor who is not a party to this lawsuit. But "choosing one treatment recommendation over another does not amount to deliberate indifference where both recommendations are made by qualified medical professionals." *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 797 (7th Cir. 2014) (holding that it is not deliberate indifference for a prison to approve one doctor's recommendation for physical therapy though specialists recommended surgery). Such is the case here. No fact question exists over the defendants' decision where the record shows that Miller's hernia was neither incarcerated nor symptomatic.

Miller also states that the defendants denied him pain medication for several months and that Wexford Health Sources is liable, as their employer, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). But his response to the motion for summary judgment made no mention of these claims, so they are waived on appeal. *See Gates v. Bd. of Educ.*, 916 F.3d 631, 641 (7th Cir. 2019).

Miller generally challenges the judge's ruling regarding Correctional Officer McGuire. He maintains that a factual dispute exists over whether McGuire made him carry his 80-pound property box up a flight of stairs. But no evidence supports an inference that McGuire had subjective knowledge of any excessive risk to Miller's health because no physician had prescribed a lifting accommodation for him, *see Leiser v. Kloth*, 933 F.3d 696, 705 (7th Cir. 2019), and his need for one was not so obvious from the small wound that McGuire should have recognized it. Moreover, Miller testified that he did not know if McGuire asked him to move the box or if McGuire even was present at the move. Though Miller now says he remembers that it was McGuire, he did not refute his testimony at summary judgment and may not do so now. *See* FED. R. CIV. P. 56(e)(2).

Finally, to the extent Miller now contends that Correctional Officer Walla told nurses to deny him bandage changes in retaliation for his filing grievances, his response to the defendants' motion for summary judgment did not raise this claim so he has waived it. *See Gates*, 916 F.3d at 641.

We have considered Miller's remaining arguments, and none has merit.

AFFIRMED